## COGHLAN v. UNITED STATES.

No. 12912.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1945.

Rehearing Denied April 11, 1945.

Joseph Coghlan, of Bismarck, N. D., pro se.

Harry Lashkowitz, Asst. U. S. Atty., of Fargo, N. D., for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

Appellant was convicted of violations of subsections 6 and 7 of Section 52, sub. b, 11 U.S.C.A., which so far as here pertinent, read as follows: "A person shall be punished by imprisonment for a period of not to exceed five years or by a fine of not more than $5,000, or both, upon conviction of the offense of having knowingly and fraudulently * * * (6) while an agent or officer of any person or corporation, and in contemplation of a proceeding under this title by or against such person or corporation, or with intent to defeat this title, concealed or, with or without concealment, transferred any of the property of such person or corporation; or (7) after the filing of a proceeding under this title or in contemplation thereof, concealed, destroyed, mutilated, falsified, or made a false entry in any document affecting or relating to the property or affairs of a bankrupt."

The indictment contains thirteen counts. Defendant was acquitted on counts 7 and 8. Count 1 charges that defendant "while an agent, to-wit: attorney for one Wilhelm Engel, in contemplation of filing a proceeding for and in behalf of the said Wilhelm Engel under Sections 201 and 203, inclusive, of Title 11, United States Code, [11 U.S.C.A. §§ 201 to 203], commonly called the Frazier-Lemke Act, and which said proceedings were thereafter and on August 5, 1942, filed with the Clerk of the United States District Court for the District of North Dakota, did wilfully, unlawfully, knowingly, feloniously and fraudulently, make and cause to be made in a docment affecting and relating to the property of the said Wilhelm Engel, to-wit: in the Schedules in Bankruptcy of the said Wilhelm Engel and upon Schedule B–2 thereof,

under the heading 'Personal Property,' a certain entry in the word as follows, to-wit: 'None,' which said entry purports to show and does in fact state and declare that the said Wilhelm Engel had no personal property to be listed on Schedule B–2 aforesaid, and which said entry was false as he, the said defendant, then and there well knew, in that the said Wilhelm Engel at the time of the preparation of said Schedules and when same were thereafter filed had personal property which should have been scheduled upon said Schedule B–2, consisting of cattle, sheep, poultry, horses, farm machinery and implements, an automobile, and cash, of an approximate value of $7,344.00." Counts 3, 5 and 9 are similar, except that they refer to different bankrupts. Counts 2, 4 and 6 again charge defendant, while acting as agent for the bankrupts, with the making of false documents by showing that he had not been paid anything for attorney fees. Counts 10, 11, 12 and 13 charge that defendant, while acting as agent for the named bankrupts, concealed property of the bankrupts falsely and fraudulently. Count 10, which may be taken as typical of the counts charging concealment, charges "That at said time and place the said defendant, while acting as an agent, to-wit: attorney for one Wilhelm Engel, in contemplation of filing a proceeding in behalf of the said Wilhelm Engel under Sections 201 to 203, inclusive, of Title 11, United States Code [11 U.S. C.A. §§ 201 to 203], and which said proceeding was thereafter and on August 5, 1942, filed with the Clerk of the United States District Court for the District of North Dakota, did wilfully, unlawfully, knowingly, feloniously and fraudulently conceal certain personal property of the said Wilhelm Engel, to-wit: personal property consisting of cattle, sheep, poultry, horses, farm machinery and implements, an automobile and cash, of an approximate value of $7,344.00."

Defendant interposed a demurrer to the indictment which was overruled. He moved for a directed verdict of not guilty at the close of all the evidence which was denied and the case was sent to the jury upon instructions, to certain of which defendant saved exceptions. The jury having found defendant guilty on eleven of the thirteen counts of the indictment, he was sentenced to imprisonment for a term of two years on each count of the indictment, except counts 7 and 8, the sentences to run concurrently.

Defendant seeks reversal on substantially the following grounds: (1) the court erred in overruling his demurrer to the indictment; (2) the court erred in denying his motion for a directed verdict at the close of all the evidence; (3) the court erred in admitting Exhibits 1 and 8 over his objection; (4) the court erred in admitting Exhibits 14, 15 and 16 over his objection; (5) the court erred in its instructions with reference to counts 2, 4 and 6; (6) the court erred in giving its instructions as to counts 10, 11, 12 and 13.

■ The statute under which the indictment is drawn fixes the penalty at imprisonment for a period not to exceed five years, or by a fine of not more than $5,000, or both. The two year sentence imposed on defendant was less than the maximum that could have been imposed under each count. As the sentences run concurrently, if any one of the counts is good and the conviction under such count sustained by the evidence, the judgment appealed from should be sustained. In these circumstances it will be deemed unnecessary to consider the questions raised with respect to counts 1, 2, 3, 4, 5, 6 and 9 of the indictment, if we find that the convictions on counts 10, 11, 12 and 13, for violation of subsection 6 of Section 52, sub. b, or either of them, are sustained. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375; Dillon v. United States, 8 Cir., 113 F.2d 334; Gantz v. United States, 8 Cir., 127 F.2d 498; Holiday v. United States, 8 Cir., 130 F.2d 988; Carpenter v. United States, 8 Cir., 113 F.2d 692.

Defendant is a lawyer and if, as alleged in counts 10, 11, 12 and 13 of the indictment, he has violated the cited sections of the Bankruptcy Act, it was by preparing and filing schedules that were false in that they failed to disclose assets of the bankrupts. Defendant was a former Conciliation Commissioner under the Frazier-Lemke Act. It appears from the evidence that he represented about 100 petitioners in proceedings under that act, his clients being farmers from various counties of North Dakota. There are four bankruptcy cases involved in counts 10, 11, 12 and 13 of the indictment. Prior to filing petitions for these farmers defendant had conferred with each of them, and each told

him that he had considerable personal property and each told him of what his personal property consisted. For instance, one told him that he owned sixty head of cattle, six work horses, five hogs, agricultural implements and household effects; another disclosed that he owned twenty-eight head of cattle, four horses, a line of farm machinery, poultry, an automobile, seed and feed; another disclosed that he owned forty-five head of cattle, twenty-three horses, three or four hogs, an automobile, a line of farm machinery, and other property; another disclosed that he owned forty-two or forty-three head of cattle, about sixty or seventy head of sheep, fifteen or sixteen horses, some hogs, chickens, and a large assortment of farm implements. In each of the four cases defendant was given a list of the personal property of the farmer. When he prepared the petitions and schedules in bankruptcy, however, he omitted from the schedules any mention of personal property, except to state affirmatively that the petitioner owned "None." The manifest purpose of so doing was to show that these petitioners were unable to meet their debts and hence were qualified to proceed under the Frazier-Lemke Act. In some, if not all, of the cases the farmers signed the schedules in blank and they were filled in by the defendant. The schedules so prepared and filed by defendant not only failed to disclose assets belonging to the applicants, but they falsely represented that no attorney fees had been paid him by the applicants, whereas, attorney fees in each case in substantial sums had been paid

■ In support of the contention that the demurrer to the indictment should have been sustained, and that the motion for a directed verdict should likewise have been sustained, it is contended that the making of a false schedule, which by design omits substantial property of the bankrupt, is not a violation of the act because it can not and does not amount to a concealment of property. In this connection it is also argued that defendant was not an agent of the bankrupts in preparing and filing the schedules. Section 52, sub. b (6), 11 U.S.C.A., providing for punishment of a person who while an agent or officer of any person or corporation, and in contemplation of bankruptcy proceedings, conceals any of the property of the bankrupt shall be punished, was added to Section 29 of the

Bankruptcy Act of 1898 by amendments of 1926 and 1938. Concealment of property was made punishable by the Bankruptcy Act of 1898. Section 29, sub. b (1), 11 U.S.C.A. § 52, sub. b (1), made it an offense to conceal, while a bankrupt, from the trustee any of the property belonging to the estate in bankruptcy. This provision has been continued in somewhat changed phraseology in the amendments to the act. A failure to schedule property may constitute a false oath or a concealment, both being offenses under the Bankruptcy Act. Sec. 29, sub. b (1) and (2). Duggins v. Heffron, 9 Cir., 128 F.2d 546. Speaking of concealment under Section 29, sub. b (1), the Circuit Court of Appeals of the Seventh circuit, in United States v. Shapiro, 7 Cir., 101 F.2d 375, 378, said: "Omission of any assets from the schedule indicates concealment, but this taken alone is not conclusive. The conduct of the bankrupt, the relative extent of the omission, the character of the asset itself, and the reasons given for the difference between the financial statements of the business and the bankruptcy schedules are the other circumstances in every case. If these circumstances explain the omission, there is no concealment. In other words 'if the facts show continued concealment', the offense has been consummated. The crime is complete when the act of concealment or transfer is performed with a criminal intent."

■ The Shapiro case was considering a concealment by a bankrupt. The amendments noted to Section 29, sub. b (6) define concealment before and in contemplation of bankruptcy. Omitting from schedules prepared in contemplation of bankruptcy, property owned by the bankrupt, may effectively conceal his property. Concealment is defined by the act, 11 U.S.C.A. § 1 (7), to include "secrete, falsify, and mutilate," but this definition does not purport to be exclusive. It may also mean to prevent the discovery of or to withhold knowledge of, and when assets are knowingly and fraudulently omitted from sworn schedules, this amounts to a false oath and objections to the bankrupt's discharge may be based either on a violation of Section 29, subd. b (1) and (2) for taking a false oath or for concealment. Collier on Bankruptcy (14th Ed.) pp. 1298, 1299. Manifestly, the word is not to be limited in meaning to physical secretion, as contended

by defendant. It also means to prevent discovery or to withhold knowledge by refusing or failing to divulge information. As said by the Circuit Court of Appeals of the Third Circuit, in United States v. Schireson, 3 Cir., 116 F.2d 881, 884, 132 A.L.R. 1157, "In connection with the problem of analyzing what is involved in this offense it must be borne in mind that the word 'conceal' does not mean merely to secrete or hide away. It means, also, 'to prevent the discovery of or to withhold knowledge of.' If a bankrupt owned land with an office building on it, it is hardly conceivable that he could physically hide it away. Yet there could be no doubt that he would be concealing this asset from the trustee in bankruptcy by failing to disclose his ownership. * * * So, here, if the bankrupt falsified his schedule of assets in Philadelphia he 'withheld knowledge of' them from the trustee and thereby concealed them no matter where the goods were located."

The crime is complete when the act of concealment or transfer is completed with criminal intent. United States v. Knickerbocker Fur Coat Co., 2 Cir., 66 F.2d 388. Section 29, sub. b (6) as amended, defines a criminal concealment as one in contemplation of bankruptcy, thus eliminating the necessity of continuity required in the cases prior to the enactment of this amendment. In Farmers' Savings Bank v. Anton, 8 Cir., 1 F.2d 103, 108, in denying a discharge in bankruptcy, we said: " * * * the law presumes, if property which should have been included in the schedules of a bankrupt is omitted therefrom, that its omission was intentional and fraudulent, and for the purpose of concealing the same with intent to hinder, delay and defraud his creditors. The burden is cast upon the bankrupt to overcome that presumption by a satisfactory explanation of the omissions before he can obtain a discharge from his debts."

■ Mistake, inadvertence, or excusable neglect, may overcome the rational inference of a criminal intent arising from the omission of assets from schedules. The facts here, however, warrant a finding of a deliberate and wilful intent to deceive.

■ We are not impressed with the suggestion that defendant, being an attorney, was not an agent of the bankrupts he was serving. The act places upon the bankrupt the duty to prepare, make oath to and file in court "a schedule of his property, showing the amount and kind of property, the location thereof and its money value, in detail * * *." Sec. 7, sub. a (8), 11 U.S.C.A. § 25, sub. a (8). This provision is imperative and relates to one of the most important duties of the bankrupt's attorney. In Collier on Bankruptcy, 14th Ed., p. 977, it is said: "The attorney should investigate the affairs of the bankrupt and make certain that he has all of the information required in order to prepare full and complete schedules, for it is the duty of the bankrupt to present intelligent and true schedules."

■ The evidence in this case shows without dispute that defendant had all the information required to enable him to complete the schedules; that he was told by these bankrupts that they thought they had too much personal property to enable them to qualify under the act, and the conclusion that he intentionally and deliberately concealed the extent of their property can not be escaped. Neither can there be any doubt that in the preparation and filing of these schedules he acted as agent of the bankrupt. Riebold v. Hartzell, 23 N.D. 264, 136 N.W. 247, Restatement, Law of Agency, Sec. 1 (d). He was a licensed agent to act in such matters, but his license did not render him immune to punishment for violation of the act. The license to practice law is not tantamount to a license to commit a crime.

■ Counts 10 to 13 of the indictment were not subject to demurrer and proof of defendant's guilt of the acts charged in these counts is abundant. There was therefore no error in overruling the demurrer, nor in denying defendant's motion for a directed verdict. Neither was there error in the instructions of the court excepted to by the defendant. We have considered the other contentions of appellant but find them wholly without merit. The judgment appealed from is therefore affirmed.