Craig SIEGFRIED, as a sole proprietor and as a partner in The Blue Valley Company, a partnership composed of Craig Siegfried, Cedric Siegfried, Charles M. Siegfried and Frank E. Fowler, Appellant,

v.

The KANSAS CITY STAR COMPANY, a Corporation, and Emil A. Sees, Appellees.

No. 16802.

United States Court of Appeals
·Eighth Circuit.

Jan. 9, 1962.

Certiorari Denied March 19, 1962.
See 82 S.Ct. 831.

**2**

Carrol C. Kennett, Kansas City, Mo., made argument for the appellant and Ray D. Jones, Jr., Kansas City, Mo., was with him on the brief.

Carl E. Enggas, Kansas City, Mo., made argument for the appellees and Colvin A. Peterson, Jr., of Watson, Ess, Marshall & Enggas, Kansas City, Mo., was with him on the brief.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff Siegfried appeals from final judgment awarding him only nominal damages upon each of the four counts of his complaint wherein he sought to recover for loss of profits alleged to have been caused by defendants' violation of anti-trust laws. Defendants are The Kansas City Star Company which publishes the Kansas City Star each evening and on Sunday and the Kansas City Times each morning except Sunday, and owns and operates radio station WDAF and television station WDAF-TV, in Kansas City, Missouri, and Emil A. Sees, director of advertising and treasurer of The Kansas City Star Company.

The period for which damages are asked runs from January 7, 1950, to December 12, 1957. Plaintiff during all of such period owned and operated a publishing business which published and distributed the Pictorial Shopper, primarily a throwaway advertising circular, and The Independence Daily News, a daily newspaper published Monday through Friday and on Sunday. From January 1, 1953, to December 12, 1957, plaintiff was the sole owner of radio station KIMO, located in Independence, Missouri. From 1947 to 1953 he owned said station jointly with three associates.

Count I relates to plaintiff's claim for loss of profits in his operation of The Independence Daily News. Count II relates to loss of profits in the Pictorial Shopper operation. Count III involves loss in the operation of radio station KIMO by the plaintiff and his associates prior to 1953. Plaintiff's associates have not appealed from the judgment. Count IV relates to plaintiff's operation of KIMO as sole owner for the period subsequent to 1953.

Plaintiff's cause of action is based upon Section 4 of the Clayton Act, 15 U.S.C.A. § 15. Plaintiff asserts that he suffered damages principally through the loss of profits in his business enterprises above described by reason of monopolization by The Kansas City Star Company of interstate trade and commerce in the dissemination of news and advertising in metropolitan Kansas City which includes Independence, Missouri, the seat of the plaintiff's operation and by the attempt of both defendants to so monopolize.

It is established that both the defendants were by indictment charged with violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2, for monopolizing and attempting to monopolize the dissemination of news and advertising in the Kansas City area for the period from January 7, 1950, to January 6, 1953. The corporate defendant was found guilty of monopoliz-

ing and both defendants were found guilty of attempting to monopolize. The facts relating to that criminal case including those showing the scope of the monopoly activity are fully set out in our opinion affirming the conviction. Kansas City Star Co. v. United States, 8 Cir., 240 F.2d 643.

While the period involved in this case extends considerably beyond the period covered by the indictment, and while defendants claim that certain of their practices now claimed to be monopolistic were not included in the criminal case, it is clear as shown by defendants' briefs and the trial court's reported opinion, 193 F. Supp. 427, 428–429, that the main thrust of the defense in the present case is that the plaintiff has not established that he suffered any substantial damage by reason of the monopoly or attempt to monopolize. In any event, if the judgment appealed from which limits damages to nominal damages is affirmed upon the basis that plaintiff is entitled to no more than nominal damages, further exploration of the scope of the monopolization is unnecessary.

This case was tried to a jury. At the close of the plaintiff's evidence and again at the close of all of the evidence, defendants moved for a directed verdict upon each count of the complaint, urging among other things that the evidence does not afford any reasonable basis for estimating the damage claimed and that there is not sufficient competent evidence to establish either the fact or amount of damage. Judge Ridge overruled these motions, stating in part:

"[W]hat happens—what the jury does will be something for me to consider later on. I agree with you there is contradiction throughout the case on every issue in the case, and I am very skeptical as to whether or not they have proved any substantial damage with reference to any one of the counts in the case."

\* \* \* \* \* \*

"[I]f the jury brings in much over one dollar in respect to any one of the counts, I will review their verdict on after trial motions and determine then whether or not they have made a submissible case with reference to the question of damages."

Defendants contend upon this appeal that they are entitled to a directed verdict determining that plaintiff has failed to prove substantial damage. As the trial court indicated, defendants' right to such directed verdict presents a close question. However, like the trial court, we find no inconsistencies between the special verdicts and the judgment entered; hence we forego consideration of the directed verdict issue.

The court gave the jury very complete, fair and carefully prepared instructions upon all of the issues presented by this case and on the afternoon of December 7, 1960, submitted the case to the jury on general forms of verdict. After the jury had deliberated some two hours, they were sent home for the night. The following morning the court called counsel into chambers and furnished them with copies of forms of special verdicts he proposed to submit to the jury in place of the general verdicts. The court afforded counsel adequate opportunity to examine and except to the special verdict forms. Plaintiff excepted to the special verdicts upon the ground that such submission was not timely and that the court failed to include a special verdict on his claim as to increased cost of circulation caused by defendants' failure to permit its contract carriers to deliver plaintiff's papers.

Thereupon the court called the jury back to the courtroom ascertained that the jury had not reached a unanimous decision upon any of the issues they were considering, and the court thereupon withdrew from the jury's consideration the general verdict forms and submitted special verdicts for the jury to answer. Such special verdicts, together with the jury's ultimate answers thereto, appear in full in the trial court's opinion, pages 439, 40, 193 F.Supp.

At 3:50 p. m., on the same day, the jury sent a note to the court reading:

"We are in agreement as to all questions except those questions pertaining to the amount of damages. Are there any instructions which you may properly give us to enable us to arrive at a basis to be used in determining the amount of damages?"

The jury was brought back to the courtroom. The court repeated its instructions upon damages previously given, then gave the additional instructions appearing at pages 437–8 of 193 F.Supp., concluding as follows:

"Now in view of the form of verdict I have given to you, if you find the plaintiffs were injured in any one of their business operations by reason of the monopoly, but you cannot ascertain the amount of it, you may either put down the sum of one dollar or you may write in the word 'speculative.'"

Thereafter, at 4:30 p. m., the jury returned into court and reported it had reached a verdict. The verdict was read, accepted and filed. The jury answered the questions propounded by each of the special verdicts, answering the question pertaining to the amount of damages with the word "speculative". The findings of the jury upon the special verdicts are well summarized by Judge Ridge as follows:

"Shred of all superfluity, by the jury verdict returned herein a die has been cast which molds the following ultimate facts once at issue as having been finally adjudicated: (1) During the period from January 7, 1950, through December 12, 1957, the defendant The Kansas City Star Company possessed monopoly power which it used to control and dominate interstate trade and commerce in the dissemination of news and advertising; (2) and, with Emil A. Sees, it attempted to monopolize the dissemination of news and advertising in the metropolitan area of Kansas City, Missouri, as a consequence of such power; (3) such monopoly, and attempt to monopolize, were a proximate cause of injury to the plaintiffs in their operation of The Pictorial Shopper; The Independence Daily News; and Radio Station KIMO; (4) however, such monopoly power and attempt to monopolize did not substantially reduce and retard the circulation of either The Independence Daily News, or The Pictorial Shopper; (5) but did substantially reduce and retard the advertising revenue of both of those publications, as well as that of Radio Station KIMO; (6) however, the amount thereof, measured in dollars and cents, was 'speculative.' ('Substantially' as above used is synonymous with 'materially.')" 193 F. Supp., 430.

After receiving the special verdicts, the court invited counsel to file motions as to what form of judgment, if any, should be entered on the special verdicts. Plaintiff responded by urging the court to grant a new trial upon all issues, contending that the jury's findings on the issue of the amount of damages constituted no finding at all, and that the court if it entered a judgment would be depriving plaintiff of his constitutional right to have his damages determined by a jury. In the alternative, plaintiff moved to have a new trial on the issue of damages and upon all issues not specifically submitted to the jury by the special verdict forms.

Defendants' position is that the special verdicts reflect that the jury found that the plaintiff had not met his burden of proof to establish substantial damages; that the verdicts determined that the plaintiff was not entitled to recover anything more than nominal damages and that judgment should be entered for nominal damages in accordance with the special verdicts. The court entered judgment in favor of the plaintiff for $1.00 upon each of the four counts, which damages were trebled pursuant to 15 U.S.C.A. § 15, making a total judgment in favor of the plaintiffs in the amount of $12.00.

Plaintiff took this timely appeal from such judgment.

Judge Ridge, in a well-considered memorandum opinion, 193 F.Supp. 427, sets out his views of the law, the issues, and makes an excellent summary of plaintiff's evidence upon the issue of damages. We have carefully read the record in this case and consider the trial court's summary of the evidence to be fair and complete. The parties are entirely familiar with the evidence. No point would be served by our discussing the rather extensive evidence in detail. We adopt the trial court's summary of the evidence as our own.

Plaintiff thus summarizes the points he relies upon for a reversal:

"I. Plaintiff was denied his clear Constitutional right to trial by jury on every issue of the case, when the Court received a verdict and discharged the jury when the jury had failed to assess and name the amounts of plaintiff's damages in the verdict.

"II. Plaintiff was denied his clear Constitutional right to trial by jury on every issue of the case when the Court, after receiving a verdict wherein the amounts of plaintiff's damages had not been assessed and named, discharged the jury and thereafter made findings of fact on the issue of amounts of damages and assessed and named the amounts of damages himself.

"III. a. Even if the Court had authority to sit as a jury, to make findings of fact and name the damages, he was in error in holding the record as made by plaintiffs did not afford a basis for ascertaining the amount of damages sustained by the plaintiff.

"b. The Court was farther in error in instructing the jury that they must find the amounts of plaintiff's damages to a reasonable certainty.

"IV. The credibility of the witnesses and the weight and value to be given their testimony was a matter for the jury.

"V. Plaintiff was prejudiced by the action of the Court in submitting special interrogatories to the jury, with no advance notice to plaintiff's Counsel, and after the case had been argued and had gone to the jury under a broad and comprehensive charge."

We shall discuss such points in the order stated.

### I and II.

Points I and II raise the issue that plaintiff was deprived of his Constitutional right to a jury trial upon material issues raised by his complaint, and especially with respect to his right to have the jury determine the amount of his damage. In Point I plaintiff urges that since the blanks in the special verdict fixing the amount of damage were filled in with the word "speculative", this amounted to no verdict at all and that the court should have refused to accept such verdict, and should have sent the jury back to determine the amount of plaintiff's damages in dollars and cents. Point II is based upon the premise of Point I, that the jury in effect returned no verdict as to damages and that consequently the court usurped the function of the jury in fixing the damages in the sum of $1.00 upon each count.

We accept the plaintiff's view that under the Seventh Amendment and Rule 38(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., he is entitled to a jury trial upon all material fact issues presented by his complaint. We reject plaintiff's contention that he has not in fact had a fair jury trial upon the issue of the amount of damages.

The court gave the jury complete, fair and remarkably clear instructions upon all the issues presented by this litigation, including some eight pages treating the damage issue, such instructions including the following:

"If the fact of damage is shown to exist by a preponderance of the evidence and the amount of damage is

left in conjecture, speculation or surmise, then plaintiffs can only recover nominal damages, i. e. $1.00, or some other modest sum."

When the jury came to the court for further aid to enable them to determine damages, the court re-read its damage instructions and gave the jury additional instructions hereinabove referred to and set out in part. There is also included in the court's additional instructions the following:

"If you write in the word 'speculative' all of you agree among yourselves whether that is the state in which you are left by reason of the proof in the case.

"If you do that, then there are questions of law which that will indicate to the Court to pursue under the law. That would be an aid to the Court in this case. If you are left in that state of mind and you can't ascertain the amount of damages and you think that it is speculative, either write the sum of one dollar or put the word 'speculative' so that the Court will have an indication of what your collective mind is with reference to that particular subject."

It seems clear to us from the court's instructions as a whole, including the supplemental instructions, that the court in effect instructed the jury that if they found that the plaintiff had not met the burden of proving any ascertainable actual damages, they should allow the plaintiff only nominal damages and that such verdict could be expressed by filling in the blanks provided for the amount of the verdict with the words "$1.00" or "speculative", and that the jury so understood the court's instructions, and that the jury by filling in the amount blanks with the word "speculative" expressed their collective view that plaintiff was entitled to no substantial damages but only to nominal damages.

It appears from plaintiff's exception to the additional instructions on damages that he also understood the instructions. Such exception reads:

"The plaintiffs wish to object and except to the additional oral instructions given by the Court to the jury, in that it invades the province of the jury, having the effect of directing the jury in the amount of damages to return on each count of the plaintiffs' petition, that amount being one dollar."

■ We conclude that the jury's special verdicts reflect their decision that the plaintiff was entitled to only nominal damages. Thus the court in entering judgment for $1.00, trebled, on each count was only entering judgment on the special verdicts of the jury. Plaintiff's claim that the court usurped the function of the jury and fixed the amount of damages independently of the verdicts is without merit. Plaintiff has not been denied a jury trial on the damage issue.

III.

■ Plaintiff contends that even if the court had authority to fix the amount of damages, there is no evidentiary basis for a finding that plaintiff failed to produce proof whereby the jury could have made a reasonable estimate of the amount of damages. The answer is that the jury, not the court, made the finding that plaintiff had not established his right to recover substantial damages. It is true that the court was of the view that the plaintiff had not offered evidence from which the amount of damages could be reasonably estimated, but the court submitted the issue of damages to the jury and received their answer that such damages were speculative. Since the jury determined upon the basis of all the evidence that plaintiff was not entitled to substantial damages, we see no need for passing upon defendants' motion for a directed verdict on the substantial damage issue. In any event, the evidence on damages, so well summarized in the trial court's opinion, affords a reasonable basis for the jury as a fact-finder to reach a permissible conclusion that the plaintiff is entitled to no substantial damages.

Plaintiff further asserts that the court erred in instructing that the jury must

find plaintiff's damages to a reasonable certainty. In making this point, plaintiff has not complied with our Rule 11(b) Third, 28 U.S.C.A., which requires setting out the portion of the instruction objected to and the exception made thereto. The record discloses that plaintiff objected to the portion of the damage instruction placing the burden on him "to go forward and ascertain those damages with exactness" and also excepted as follows:

"And we submit that the Court erred when he submitted that where the fact of damage is established the jury cannot speculate as to the measure of damages, as we believe the proper rule of law is that you cannot speculate as to the fact of damage, but where the fact of damage has been established you can speculate the amount if there is either raw evidence or a sufficient basis of measurement."

■ It is apparent that the objection now raised is somewhat different from that raised in the trial court, and hence the criticism of the instructions now made is not properly before us for consideration.

■ It is quite true that where the fact of damage has been established, some liberality exists in the determination of the amount of damages. This is recognized repeatedly by the trial court in its extensive instructions and in its opinion. See pages 429, 430–36 of 193 F.Supp. The trial court, at page 436, states:

"[T]here is not one iota of testimony from Mr. Siegfried, any expert witness, or any other source, as to the probable amount of advertising Siegfried might, or could, reasonably have lost or received from such advertisers but for the monopoly or attempt to monopolize adjudicated. The jury in this case was not given any measuring rod concerning that matter, but was invited by plaintiffs to merely guess and fix the quantum of damages from that source.

\* \* \* \* \* \*

"It has long been recognized that though the amount of anticipated profits, dependent as they are upon numerous and uncertain contingencies, is not susceptible of proof with certainty, but that fact, standing alone, does not prevent recovery thereof, if there is evidence from which a jury may reasonably estimate, though not exactly, the amount thereof."

■ There must be some evidentiary basis to support an inference as to loss of net profits. A damage verdict may not be based upon speculation and guesswork alone. Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652; Eastman Kodak Co v. Southern Photo Materials Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684; Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96; Clapper v. Original Tractor Cab Co., 7 Cir., 270 F.2d 616, cert. denied, 361 U.S. 967, 80 S.Ct. 592, 4 L.Ed.2d 547; Flintkote Co. v. Lysfjord, 9 Cir., 246 F.2d 368, 393, cert. denied 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46; Fireside Marshmallow Co. v. Frank Quinlan Const. Co., 8 Cir., 213 F.2d 16, 18.

■ While the damage instructions given the jury do contain statements that damages must be proved with reasonable certainty and cannot be based solely upon speculation or guesswork, the instructions as a whole reflect that the plaintiff was not required to prove its damages to a certainty but that damages could be allowed on the basis of proof of facts from which the amount of loss of net profits may reasonably be inferred. For example, the court stated:

"Now, the law does not require that the plaintiffs make exact proof, in dollars and cents, of the exact amount of loss of anticipated net profits claimed in an antitrust case, but it does require that a claim for loss of anticipated net profits made as a result of such a claim be sustained by proof of facts that pass the realm of conjecture, speculation, or opinion not founded on facts; and must consist of actual facts from

which a reasonably accurate conclusion regarding the cause and amount of such a claimed loss can be logically and rationally drawn. In such a case, even where the defendant, by its own wrong has prevented a more precise computation of the amount of damages claimed, the jury may not render a verdict based on speculation or guesswork.

\* \* \* \* \* \*

"If, however, the plaintiffs have made proof of factors, or proof of facts, from which the fact of injury and the amount of loss of net profits may be reasonably inferred, in some reasonable amount, then the plaintiff is entitled to recover the amount of any such loss of net profits in an action such as this."

The court's instructions upon the damage issue when considered as a whole fairly state the law relating to damages.

### IV.

We agree with plaintiff's general statement that the credibility of witnesses and the weight to be given their testimony is for the jury to determine with respect of fact issues submitted to the jury. However, this principle offers plaintiff no comfort for it is our view that credibility issues were in fact determined by the jury. In arguing this point, plaintiff stresses his business records. Records of expense and income from The Independence Daily News and the Pictorial Shopper and the job printing enterprise not involved in this litigation were all kept in one account. Plaintiff by his bookkeeper attempted to allocate the profits and expenses pertaining to each segment of plaintiff's business. Various reports submitted at different times show widely varying allocations and interpretations of the plaintiff's records. The trial court, at page 435 of 193 F.Supp., sets out convincing reasons why it believes such records constitute no reasonable basis for a claim of loss of profits. The jury had this evidence before it for what it was worth.

There is likewise substantial evidence that any loss of advertising revenue might be due to causes other than monopoly. Some people did not like plaintiff's paper or its editorial policy. The field was saturated with local papers and advertising mediums. Plaintiff conceded that The Independence Examiner was superior to his own newspaper. There is evidence that some advertisers were absorbed by national chains which had their own advertising policies. An employee of the plaintiff commenced a rival shopper. The jury was entitled to consider this evidence and the evidence as a whole in determining the probability of the loss of advertising revenue by the plaintiff by reason of the monopoly.

### V.

Plaintiff complains of error by reason of the submission of the special verdicts to the jury. The plaintiff had a fair opportunity to examine and object to the forms of special verdict before they were submitted to the jury. The jury had reached no decision on the general verdicts when the special verdicts were substituted for the general verdicts. Rule 49(a) authorizes courts to submit cases by means of special verdicts. The rule does not expressly require special verdicts to be submitted at the time the instructions are first given. In McDonnell v. Timmerman, 8 Cir., 269 F.2d 54, we held that under Rule 49(a) the court has a broad discretion not only on the issue of whether or not to utilize special verdicts but also as to the matter of form of the special verdicts, and we further held "the number and form of issues, if they present the case fairly, is a matter resting in the sound discretion of the trial judge."

While it is perhaps somewhat unusual for the court to submit a case on special verdicts after it had been originally submitted on general verdicts, no prejudice to the plaintiff is shown by the use of such procedure here. The record clearly shows that the jury had not agreed upon the general verdicts when the special verdicts were substituted. Plaintiff had ample time to examine the special verdict forms, and object thereto. Plaintiff made no objection to the form of

any of the special verdicts submitted. Plaintiff has failed to demonstrate that the court committed any prejudicial error in submitting this case to the jury on special verdicts.

By way of summary, we state that we have carefully examined the record and the transcript of testimony, and that we are satisfied that the plaintiff has in all respects had a fair and impartial trial. Eleven pretrial conferences were held. Plaintiff was given a full opportunity to develop and present his evidence. No question is properly before us on this appeal with relation to the admission or exclusion of any evidence. The record supports Judge Ridge's statement to the effect "if the record in this case attests to anything, it attests to the plain, clear and unqualified fact that this Court has done everything in its power to give plaintiffs and defendants every possible opportunity to marshal all evidence available to them in support of their respective theories of claim and defense for submission to the jury empaneled in this action."

Plaintiff has failed to establish that the court committed any error in entering the judgment appealed from.

The judgment is affirmed.