Palmer A. PETERSON, Appellant,

v.

Faye V. PETERSON, Robert W. Dygert
and James P. Rorris, Appellees.

No. 18648.

United States Court of Appeals
Eighth Circuit.

Aug. 26, 1968.

Irving Shaw, St. Paul, Minn., for appellant.

Robert W. Dygert, Minneapolis, Minn., for appellees; Thomas G. Lovett, Jr., Minneapolis, Minn., was with him on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

Palmer A. Peterson appeals from his adjudication in bankruptcy by Judge Lord made on a jury's answers to special interrogatories.

The appellant is a physician and surgeon. The controversy has emerged from the bitter domestic difficulties which arose between Dr. Peterson and

his wife. They were divorced by decree of the Hennepin County, Minnesota, District Court entered August 19, 1964, and thereafter amended and supplemented. See Peterson v. Peterson, 274 Minn. 568, 144 N.W.2d 597 (1966). The petition for adjudication of the doctor as a bankrupt was filed February 25, 1966, by Mrs. Peterson and two attorneys who represented her in the divorce proceedings. There were other creditors but none of these joined in the involuntary petition. Mrs. Peterson's claim was for past-due alimony and child support. The respective claims of the attorneys were for fees for legal services and disbursements in the divorce action.

The petition, as amended during trial, alleged the first act of bankruptcy set forth in § 3(a) of the Bankruptcy Act, 11 U.S.C. § 21(a), namely, concealment of property, with intent to hinder, delay or defraud creditors, within the preceding four months. The doctor's answer denied insolvency and also denied the commission of any act of bankruptcy. He made timely written application for a jury trial of these issues as § 19(a), 11 U.S.C. § 42(a), permits.

Insolvency and concealment were the issues actually tried. Judge Lord submitted to the jury two special interrogatories, namely, (1) "Was Palmer A. Peterson insolvent on February 25, 1966?" and (2) "Did Palmer A. Peterson commit any act of bankruptcy within a four-month period prior to February 25, 1966?" The court, however, ruled that Dr. Peterson's refusal to answer questions on November 16, 1965, at supplementary proceedings under M.S.A. § 575.02 [1] was an act of bankruptcy as a matter of law. Accordingly, the court instructed the jury to answer the second interrogatory in the affirmative. The jury did this and also returned an affirmative answer to the first interrogatory.

Dr. Peterson, as appellant, asserts five points: (A) legal insufficiency of the creditors' petition; (B) error in directing the answer to the second interrogatory; (C) insufficiency of the evidence on the act of bankruptcy issue; (D) insufficiency of the evidence on the insolvency issue; and (E) trial errors.

A. *The insufficiency of the petition.* The attack upon the petition is twofold. It is said that it lacks the requisite particularity in its allegation of an act of bankruptcy. It is also said that the three petitioning creditors did not possess separate and distinct claims and thus did not constitute the minimum of three usually required under § 59(b), 11 U.S.C. § 95(b), for an involuntary petition.

1. The petition as originally filed alleged that on November 16, 1965, a date within four months, "and ever since said time", the doctor "concealed and refused to disclose information with respect to his property, with intent to hinder, delay, or defraud his creditors". During the trial counsel for the creditors observed that "it seems that the language of our petition is somewhat ambiguous". Over objection, but with the court's permission, the petition was amended to read:

"* * * within four months next preceding the filing of this Petition the said Palmer A. Peterson committed an act of bankruptcy in that he did heretofore, to-wit: 1. Conceal and secrete his property during all of said period. 2. On November 16, 1965, and at all other times during said period, refused to disclose information with respect to his property. 3. Admitted in writing on or about January 28,

---

1. § 575.02

"When an execution against property of the judgment debtor * * * is returned unsatisfied, in whole or in part, the judgment creditor is entitled to an order from the judge of the district court of the district where the debtor resides * * * requiring the judgment debtor * * * to appear and answer concerning his or its property, at a time and place specified in the order, before such judge or a referee therein named. * * * "

1966, that he was insolvent and unable to pay his just debts."

We note, initially, that the allegation as to the doctor's written admission of insolvency was not tried and is not a factual issue before us. We therefore need not be concerned with the problem whether the allegation as to the written admission is that of a newly alleged act occurring more than four months prior to the amendment. Confining ourselves, as the trial court was confined, to the other allegations, we are satisfied that the amendment was no more than a clarification of the original petition and thus appropriately related back to the date of the original petition. In re Yellow Motor Co., 34 F.2d 118, 120 (8 Cir. 1929), cert. denied 280 U.S. 590, 50 S.Ct. 38, 74 L.Ed. 639; In re Magone Furniture Co., 227 F.Supp. 358, 360 (D. Or.1964).

The appellant's particularity argument begins with what is said to be a distinction between the statutory requirement under § 3(a) (1) of concealment of property [2] and an emphasis in the petition upon the concealment of information about property. Certainly, however, the petition as amended flatly alleges the concealment and secretion of property throughout the four month period. And we read the petition prior to amendment as alleging concealment of property as well as refusal to disclose information; we do not read it as confined to concealment of information.

It has been held, as the appellant points out, that a mere failure voluntarily to disclose information may not equate with concealment of property within the meaning of § 3(a) (1). Continental Bank & Trust Co. of New York v. Winter, 153 F.2d 397, 399 (2 Cir. 1946), cert. denied 329 U.S. 717, 67 S.Ct. 49, 91 L.Ed. 622; In re Shoesmith, 135 F. 684, 687 (7 Cir. 1905), appeal dismissed 198 U.S. 582, 25 S.Ct. 804, 49 L. Ed. 1172. And too general averments, or those which merely employ the language of the statute, have been held to be insufficient. South Suburban Safeway Lines, Inc. v. Carcards, Inc., 256 F. 2d 934, 935 (2 Cir. 1958). Facts must be alleged with sufficient clarity and specification as to apprise the alleged bankrupt of what he must meet. In re Adams, 53 F.Supp. 982, 983–984 (M.D. Pa.1944). But "Where the act of bankruptcy consists of a concealment of the bankrupt's property, the precise details of the act of concealment may not, from the nature of the act, be capable of allegation". 1 Collier on Bankruptcy (14th Ed.), para. 3.106, p. 425. "The manner and details, however, of the concealment, are matters of evidence, and not of averment". In re Bellah, 116 F. 69, 72 (D. Del.1902). Thus, in the case last cited it was held that if it is alleged that a specific fund was concealed with the requisite intent, the petition is not defective for want of particularity. "If the defendant concealed the specified fund as alleged, it must be assumed that the details and circumstances of the concealment were within his knowledge, and no hardship can be involved in requiring him to answer and meet the charge of concealment * * *." P. 73 of 116 F.

This court has observed that the statutory definition of concealment in § 1(7) "does not purport to be exclusive. It may also mean to prevent the discovery of or to withhold knowledge of * * *." Coghlan v. United States, 147 F.2d 233, 236 (8 Cir. 1945), cert. denied 325 U.S. 888, 65 S.Ct. 1569, 89 L.Ed. 2001. This same approach to the concept of concealment appears in other cases. In United States v. Schireson, 116 F.2d 881, 884, 132 A.L.R. 1157 (3 Cir. 1940), Judge Goodrich observed that the word "conceal" is not confined to secreting or hiding away. "It means, also, 'to prevent the discovery of or to withhold knowledge of' ". See, also, In re Verona Constr. Co., 126 F.2d 976, 977, footnote 3 (3 Cir. 1942); In re Glazier, 195 F. 1020, 1021 (M.D.Pa.1912); Burchinal v. United States, 342 F.2d 982, 985 (10

---

**2.** Section 1(7) of the Bankruptcy Act, 11 U.S.C. § 1(7) provides, " 'Conceal' shall include secrete, falsify, and mutilate."

Cir. 1965), cert. denied 382 U.S. 843, 86 S.Ct. 46, 15 L.Ed.2d 84.

█ Here the petition originally alleged concealment and refusal to disclose on a specified date and continuously after that date and, after amendment, throughout the four month period. The date specified was a legally significant one, namely, that on which testimony in supplementary proceedings was requested of Dr. Peterson. Thus, so far as the allegations are concerned, there was nothing mysterious or indefinite or unknown for the alleged bankrupt. He was clearly apprised of what he had to meet. We hold that, under the circumstances here, the petition meets the requirements of particularity and is legally sufficient in its concealment allegations.

2. The argument relating to non-separateness of claims is that the three claimants are Dr. Peterson's divorced wife and attorneys who acted for her in the divorce proceedings; that her claim consists, at least in part, of unpaid alimony which, under § 17(a) (2), 11 U.S. C. § 35(a) (2), is not dischargeable; that the claims of the attorneys are merely derivative under M.S.A. § 518.-14; that the divorce decree provided that Mrs. Peterson "have and recover" of the doctor specified sums "as and for reasonable attorneys fees" for the respective attorneys and "as and for reasonable expenses incurred" by them; and that the three claims, therefore, are only one debt.

█ The answer to this argument lies in the specific and clear language of the cited Minnesota statute. M.S.A. § 518.14 is set forth in the footnote [3] in the form it has possessed since its amendment by Laws 1955, c. 687, § 1. From a reading of the statute it is apparent that an award of an attorney's fee and its collection are enforceable either in the divorce court itself or by the attorney in an independent action in his own name. It is thus an asset individually and separately owned by him irrespective of the fact that the divorce decree incorporates, for the protection of the spouse, an "award" to her for the fees of her attorney. This detail, however, serves in no way to lessen the independent character of the attorney's claim.

In Whipple v. Mahler, 215 Minn. 578, 10 N.W.2d 771, 773 (1943), a case decided prior to the 1955 amendment and at a time when § 518.14 did not contain the flat provision for a separate action by the attorney in his own name, the Minnesota court said, "Where, as here alleged, the court required direct payment to the attorney, he is a beneficiary of the adjudication and may sue for a liquidated amount". Thus, even then, the character of the fee claim was apparent. And in Johnson v. Johnson, 256 Minn. 33, 97 N.W.2d 279 (1959), the court stressed the accomplishments of the 1955 amendment and applied the statute, despite some deficiency in language, to disbursements as well as to fees.

3. § 518.14

"In any action brought either for divorce or separate maintenance, the court, in its discretion, may require one party to pay a reasonable amount, necessary to enable the other spouse to carry on, or to defend the action, and to support such spouse and the children during its pendency. The court may adjudge costs and disbursements against either party. The court may authorize the collection of any money so awarded by execution, or out of any property sequestered, or in any other manner within the power of the court. An award of attorney's fees made by the court during the pendency of the action or in the final judgment survives the action and if not paid by the party directed to pay the same may be enforced as above provided or by a separate civil action brought by the attorney in his own name. If the action is dismissed or abandoned prior to determination and award of attorney's fees the court may nevertheless award attorney's fees upon the attorney's motion and such award shall also survive the action and may be enforced in the same manner as last above provided."

We hold that where, as here, the Minnesota divorce court directs the payment of an attorney's fees and disbursements, the attorney so favored has, under § 518.14, a separate and distinct provable claim and is a separate and independent creditor within the meaning of § 59(b) of the Bankruptcy Act.

*B. and C. The trial court's direction of the answer to the interrogatory concerning the commission of an act of bankruptcy, and the insufficiency of the evidence as to an act of bankruptcy.* These obviously are aspects of the same issue and we consider them together.

The doctor's argument is that the petitioning creditors have the burden of proof; that this burden was not sustained; that the trial court indicated that two insurance policies on the doctor's life were pivotal and held that they had been concealed in the face of knowledge of their existence on the part of the attorney-creditors; that the answer to the interrogatory could not be directed by the court without a motion therefor; that the record does not support a finding of concealment; and that the court invaded the province of the jury.

Introduced into evidence as exhibits were at least a part of the divorce court's findings, conclusions and order for judgment, the amendment thereof, and that court's judgment and decree. Although there is a suggestion by the appellees that Paragraph 12 of the findings was not offered and received, we accept, for present purposes, the doctor's assertion that that paragraph described by name and number two life insurance policies in force on his life.

The divorce court's judgment and decree, dated January 28, 1965, so far as it concerned attorneys' fees and disbursements, adjudged, among other things, that Mrs. Peterson have and recover of Palmer A. Peterson $6,000 for fees and disbursements of one of the attorney-creditors. On August 27, 1965, on an affidavit to the effect that an execution for said $6,000 had duly issued against the property of the judgment debtor and had been returned wholly unsatisfied, the state court ordered Dr. Peterson to appear before a designated referee to answer concerning his property in proceedings supplementary to execution. These proceedings, as hereinabove noted, were held on November 16, 1965. Dr. Peterson was present and was represented by counsel. We have read the transcript of those proceedings. Except with respect to certain preliminary inquiries as to his identity and then residence, the doctor refused to answer a series of questions relating to the nature and amount of his property interests. His refusal was consistently on the ground that any answer he might give would tend to incriminate him.

At the later bankruptcy trial Dr. Peterson took the stand. He testified that in November 1965 he had in his possession or under his control "Just a few dollars"; that he was not hiding any money; that he recalled the supplementary proceedings and his refusal to answer questions on Fifth Amendment grounds; that his then attorney advised him so to refuse and for that reason; that many charges had been brought against him; that "it appeared that it [the supplementary proceedings] was held possibly for the purpose of finding some other charge to file"; that he had nothing "to hide by way of assets"; that at the time he did have "all my medical and office equipment and medications"; and that these would have a value of ten to twelve thousand dollars.

On cross-examination the doctor testified that during 1965 he "had some income from a disability policy"; that this was $100 a week; and that he "took a mortgage out on my car", thereby indicating that he possessed an automobile. He stated that when he refused to answer the questions propounded to him in the supplementary proceedings, "I didn't have any criminal charge in mind, but I had ideas that other charges would be brought"; that he was concerned about possible future civil proceedings; that "I was trying to put an end to the proceedings * * * and trying to

reach some amicable—and agreeing to some settlement of this problem"; that he was afraid he would never be able to practice medicine again; and that his refusal to answer was not because he was hiding any assets.

After the alleged bankrupt had rested his case, Judge Lord conferred with counsel about the instructions to the jury. The court indicated its intention to instruct the jury that Dr. Peterson as a matter of law committed an act of bankruptcy when he refused to answer the questions in the supplementary proceedings. Comments passed between the court and counsel for the doctor.[4]

The court then permitted the alleged bankrupt to reopen. One additional witness on his behalf took the stand. This was an insurance man who testified that on February 25, 1966, the doctor had two policies of insurance in effect; that one of the policies had a cash surrender value as of that date of $4,200; and that the other had a then cash surrender value of $2,248.60.

After both sides again had rested, the court stated to counsel that, inasmuch as Dr. Peterson had come in with evidence as to the existence of the insurance policies and inasmuch as those policies had not been disclosed at the supplementary proceedings, it was the court's intention to direct the jury that there was no issue as to the act of bankruptcy. It was pointed out that although the policies were referred to in the state court's findings of August 1964, there was a question, at the time of the supplementary proceedings, whether the policies were still in force and had value. Accordingly, the court directed the answer to the interrogatory concerning the act of bankruptcy.

As we set aside any question as to what this record technically contains, we may agree with counsel for the appellant that the divorce court findings do mention the two policies and thus that the attorney-creditors knew of the existence of those policies. But we also agree with the suggestion of counsel for the creditors that existence in August 1964 does not equate with existence on November 16, 1965, and that whether the policies had any net value on the later date is another matter.

We have, then, the situation where questions directed to the doctor in the state court-ordered supplementary proceedings and concerning his property were refused answer on the ground that answering would tend to incriminate him, and where, when he was on the stand in the bankruptcy trial, the doctor acknowledged the existence of assets and conceded that at the time of the supplementary proceedings his refusal to answer had no criminal action basis.[5]

---

4. "The Court: Well, maybe we could remedy your problem by stating that the Court rules that 'The jury is instructed that the refusal of the alleged bankrupt, Dr. Palmer A. Peterson, to answer questions during supplemental proceedings concerning the existence and location of his assets is such a concealment as to constitute an act of bankruptcy as a matter of law, *providing that you find he had assets at that time which were thereby concealed*'.

"Mr. Shaw: I will agree to that instruction, which then submits the heart of the question, and that is the heart of the case, as I see it, or the crux of it. I think the Court has hit upon the exact question of fact that is involved in that issue.

"The Court: Now, just take this down. Here is what else I would propose to give. 'You must, therefore, consider from all of the evidence adduced as to the financial affairs of Dr. Peterson whether or not he had in fact as of November 17, 1965, spent and dissipated all of his assets, or whether or not certain of those assets were concealed and hidden from his creditors'.

"Mr. Shaw: I agree with that instruction, Your Honor." [Emphasis supplied]

5. M.S.A. § 575.04, which is another section in the chapter on "Proceedings Supplementary to Execution", provides:

"Upon appearing or being brought before the judge or referee, the judgment debtor * * * may be examined under oath, and witnesses may be required to appear and testify on behalf of either party, and the debtor may be represented by counsel; and no person, on

We agree with Judge Lord that this constituted an act of bankruptcy as a matter of law and that the requisite intent was shown; we approve his directing an answer to the second interrogatory; and we hold the record to be sufficiently supportive. The situation is one involving more than mere failure voluntarily to disclose information. The supplementary proceedings were court-ordered and authorized by a governing state statute designed to defeat a party's attempt to thwart the collection of a valid judgment. No constitutional basis for the refusal to answer existed. The refusal was non-compliance with the state judicial process. With assets of value concededly in existence, this amounted to and was concealment within the meaning of § 3(a) (1) of the Bankruptcy Act.

Furthermore, we know of no rule which requires a formal motion by one side before a trial court may draw a legal conclusion and direct a verdict. It is true that Rule 50(a), Fed.R.Civ.P., refers to a motion for a directed verdict, but that rule is one which concerns a motion when it has been made and the effect of a denial of such a motion. If one refers to Rule 49(a), he sees that it authorizes the court to require a jury "to return only a special verdict in the form of a special written finding upon each issue of fact". If there is no issue of fact, the submission is not required and the absence of a motion surely does not make submission compulsory. We have in mind that a trial court has wide discretion as to the use of special verdicts. McDonnell v. Timmerman, 269 F.2d 54, 58 (8 Cir. 1959); Great American Ins. Co. v. Horab, 309 F.2d 262, 266 (8 Cir. 1962); Lowery v. Clouse, 348 F. 2d 252, 260 (8 Cir. 1965); 5 Moore's Federal Practice (2d ed.), para. 49.-03[1]. And in Siegfried v. Kansas City Star Co., 298 F.2d 1, 8 (8 Cir. 1962),

cert. denied 369 U.S. 819, 82 S.Ct. 831, 7 L.Ed.2d 785, it is evident that we approved the submission of special interrogatories without motion therefor.

We see no reason to indulge in the useless formality of requiring a motion for a direction on a special interrogatory when the record leaves no issue of fact to be resolved by that interrogatory.

D. *The insufficiency of the evidence on the insolvency issue.* The issue of insolvency was decided by the jury with its affirmative answer to the first interrogatory, namely, that the doctor was insolvent on February 25, 1966. Section 3(c), 11 U.S.C. § 21(c), provides that it shall be a complete defense to proceedings under the first act of bankruptcy to allege and prove that the party proceeded against was not insolvent at the time of the filing of the petition and that the burden of proving solvency shall be on the alleged bankrupt. No real question is raised here as to the propriety of the court's instructions on solvency or as to the appropriateness of its stated standard for insolvency; the instructions were reviewed with counsel in advance of the charge and were agreed upon.

In view of the resolution of the concealment issue, the cash surrender value of the insurance policies, amounting in the aggregate to $6,448.60, is, under § 1(19), to be excluded in balancing assets against liabilities.

The appellant in his reply brief states that "the accurate total of liabilities * * * is $34,574.05". We accept this figure for present purposes. On the other side of the ledger the doctor's assets consisted of accounts receivable, medical equipment and office furnishings and the like, and cash in the hands of the receiver who had been appointed under M.S.A. § 518.24. There were the usual conflicts in the evidence as to the

such examination shall be excused from answering any question on the ground that his examination will tend to convict him of the commission of a fraud,

but this answer shall not be used as evidence against him in any criminal proceeding. * * * "

"fair valuation", to use the language of § 1(19), 11 U.S.C. § 1(19), of Dr. Peterson's assets. The differences are wide. There is record testimony supportive of the creditors' position that these items in the aggregate amounted only to $8,-500. That figure plus the cash in the hands of the receiver produce a total far less than the conceded liabilities. Of course, the opposing evidence tends to support the argument that the aggregate asset values exceeded the liabilities. But, even then, there are intimations in the testimony of the doctor's witnesses which raise doubts for us as to the appropriateness of the larger figures. In any event, this was a conflict for the jury to resolve. It did so adversely to the doctor. We cannot say that the evidence which the jury chose to accept was so nebulous or incredible as to afford no appropriate legal basis for the jury's conclusion of insolvency.

E. *Trial errors.* Almost all of these are repetitive of the other points hereinabove considered. One complaint, however, is that counsel were initially instructed by the court that their arguments to the jury should concern the two issues of the act of bankruptcy and of solvency and that it was only after the arguments were made directed to both issues that the court decided to direct the answer to the second interrogatory. This, it is said, is prejudicial.

If this conceivably could be error, the obvious answer is that it was the alleged bankrupt who reopened, after colloquy about the interrogatories, in what obviously was an effort to bolster his case on the solvency issue, and the court then became convincingly impressed that the evidence on reopening completely eliminated any possible issue as to the act of bankruptcy. We note, too, that the court offered counsel additional time to argue in the light of the proposed direction. This was refused. The court observed, "You haven't seen fit to accept the additional time in which to argue, and so I am ready now to call the jury and give the instructions".

We see no merit in this suggestion or in any of the other items asserted as trial errors.

Obviously, this bankruptcy proceeding is but another chapter in bitter and extensive litigation. See, in addition to the divorce appeal cited above, the several opinions of the Supreme Court of Minnesota issued October 27, 1967, each entitled Peterson v. Peterson, 278 Minn. 275, 153 N.W.2d 825; 278 Minn. 432, 153 N.W.2d 830; and 278 Minn. 433, 153 N.W.2d 831. Irrespective of where the fault lies, we wish that there were some way in which we could be instrumental in bringing this enduring controversy and bitterness to a well-deserved termination before the parties suffer emotional exhaustion and financial destruction. This, however, is not within our power of accomplishment on this appeal. We only indicate to counsel that that end is worth attempting to achieve.

Affirmed.