263 A.2d 100.

RAIMUNDO R. DASILVA *vs.* EQUITABLE FIRE AND MARINE
INSURANCE COMPANY.

MARCH 20, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is a civil action in which the plaintiff-
insured seeks to recover damages from his automobile lia-
bility insurer for personal injuries caused him as the result

of an uninsured motorist's operation of a motor vehicle. A trial justice in the Superior Court found that there was no genuine issue as to any material fact, and then, sua sponte, withdrew the case from the jury and ordered judgment to be entered for the defendant. The plaintiff appealed.

The facts are not in dispute. The plaintiff, acting through Antonio Goulart, his cousin, sought out Joseph C. Prisco in order to purchase an automobile liability insurance policy. Prisco, a soliciting agent, was connected with the office of Weston & Preston Associates, Inc., an agent for defendant, and Goulart had previously purchased insurance through him. The three of them met at the Goulart residence. Because plaintiff could not write, speak, or understand English, Goulart interpreted and made it possible for plaintiff to convey to Prisco the information which was required in order to complete an application for the desired insurance. That information was recorded on an application which, upon completion, was signed by plaintiff at the appropriate place. The application was then forwarded to defendant, and in due course a policy issued.

The application consisted of a single sheet of paper. The front side is designated "Automobile Insurance Application And Policy Order" and requests the applicant to furnish his name, address and occupation, to describe the vehicle to be insured, and to select the kind of coverage to be written. The reverse side of the form is labeled "Applicant's Statement." It asks the applicant to provide a variety of information including the names of the members of his household who are age 15 and over, the name of any previous insurer, and relevant data concerning his prior driving record. A space is also provided for the applicant to affix his signature and to certify that the information which is set out is correct to the best of his knowledge and belief.

For our purposes the pertinent part of the application is the portion on the front where plaintiff selected the types

of coverage desired. There, opposite the coverage designated as "Uninsured Motorist Protection," Prisco, the soliciting agent, wrote the words "Not Preferred." In addition he testified, and his testimony is undisputed and uncontradicted, that these words were written after plaintiff, in direct response to a direct inquiry, said that he did not want that kind of coverage.

The parties agree that during the life of the policy plaintiff suffered damages of $4,500 when he sustained personal injuries as the result of the negligence of the owner and operator of an uninsured motor vehicle in which he was riding as a passenger. The dispute is whether the failure to include uninsured motorist protection in the policy prevents recovery from defendant for those damages. The plaintiff argues that the omission is not fatal to his claim.

The plaintiff relies upon the principle which reads into insurance contracts standard insurance provisions which are mandated by statutory law. 13 J. Appleman, *Insurance Law & Practice* §7382 (1943); *Mangus* v. *Doe*, 203 Va. 518, 520, 125 S.E.2d 166, 168; *Prosk* v. *Allstate Insurance Co.*, 82 Ill. App.2d 457, 459, 226 N.E.2d 498, 499; *Amidzich* v. *Charter Oak Fire Ins. Co.*, 44 Wisc.2d 45, 170 N.W.2d 813. Applying that principle he argues that the omission of uninsured motorist coverage should be cured by enlarging the policy to include the provisions of G. L. 1956, §27-7-2.1. That enactment, in effect when the policy was issued as well as now, requires, in substance, that any automobile liability insurance contract issued in this state shall protect the insured against the negligent operation of an uninsured motor vehicle.

The flaw in plaintiff's argument is that §27-7-2.1 has a qualifying clause. While that enactment requires the inclusion of a provision protecting against the negligence of an uninsured motorist, it also provides that the named insured on the policy "shall have the right to reject such cov-

erage." And in this case the coverage was rejected when Prisco, acting under plaintiff's orders, wrote the words "Not Preferred" on the application and thereby clearly and unambiguously indicated that the applicant did not want to purchase coverage against the negligence of the uninsured motorist. In preparing that application, Prisco, who on this record was empowered only to accept or solicit applications for insurance, was acting as plaintiff's agent. *Pieri* 'v. *John Hancock Mutual Life Ins. Co.*, 92 R. I. 303, 306, 168 A.2d 277, 278; *Ferla* v. *Commercial Casualty Ins. Co.*, 74 R. I. 190, 194, 59 A.2d 714, 716; *Wolf* v. *Prudential Ins. Co. of America*, 62 R. I. 270, 276, 4 A.2d 897, 899. Considering that no premium was charged or paid for uninsured motorist protection, what he wrote, either standing alone or looked at within the factual context of this case, clearly and as a matter of law imports rejection.

Conceding arguendo that he may have rejected the coverage by directing Prisco to write the words "Not Preferred" on the application, plaintiff contends nonetheless that the rejection was ineffective to absolve defendant from liability within the contemplation of Regulation C.R.II. issued by the Insurance Commissioner in implementation of §27-7-2.1. Assuming without deciding that the regulation was properly issued, it provides, insofar as here pertinent, that a named insured shall not be deemed to have rejected uninsured motorist protection unless the rejection is in writing and signed by him.

The plaintiff's argument is that he did not sign the rejection since the words "Not Preferred" appear on the front of the application and his signature on the reverse side. That argument ignores reality. All of the information supplied in order to complete the application came from plaintiff and from no one else, and unless both sides were completed the policy would not have issued. The two sides together constituted a single integrated document and

plaintiff, when he signed on the bottom of the reverse side, certified that the information on the front as well as on the reverse side was correct to the best of his knowledge and belief. There is no doubt that he rejected uninsured motorist coverage in writing and over his signature.

Finally, plaintiff argues that the jury, rather than the trial justice, should have decided whether or not there was uninsured motorist coverage. That contention has a substantive as well as a procedural aspect. The substantive aspect poses no difficulty. At issue was the legal effect of an application for insurance. It had been reduced to writing, and it fairly set out what plaintiff applied for in clear and unambiguous terms. Under settled law how to construe it was for the court, and not for the jury. *Cassidy* v. *Springfield Life Ins. Co.,* 106 R. I. 615, 262 A.2d 378; *Russolino* v. *Rotelli & Sons,* 85 R. I. 160, 163, 128 A.2d 337, 340; *Muirhead* v. *Fairlawn Enterprise, Inc.* 72 R. I. 163, 172, 48 A.2d 414, 419; *Minor* v. *Narragansett Machine Co.,* 71 R. I. 108, 115-16, 42 A.2d 711, 714-15.

More troublesome is the procedural question which, although not briefed or argued by either party, nonetheless requires consideration. It arises because the trial justice, on his own motion and without either party having moved for a direction, dismissed the jury and decided the case. While Rule 50(a) of the Superior Court Rules of Civil Procedure permits either party to move for a directed verdict and provides that an order granting the motion shall be effective without the jury's assent, neither that rule nor any other specifically authorizes a trial justice, even in a case where there are no factual issues, to take the case from the jury on his own motion. Even without specific rule authorization, however, the court in *Peterson* v. *Peterson,* 400 F.2d 336, 343, in a somewhat similar situation, analogized the submission of interrogatories under Rule 49(a), Fed. R. Civ. P., to a motion for a directed verdict, and it

said that it could find nothing in the federal rules or in reason which required a formal motion by one side as a precedent to the right of a trial court to draw a legal conclusion and to direct a verdict. Its rationale was that to insist upon a motion by a party in a controversy where there was no issue for the jury to decide was to indulge in a useless formality.

There is something to be said for the *Peterson* view, particularly in a case like this where there is no suggestion that the evidence or the issues would be any different if we were to find that the trial justice erred. The aftermath would be a new trial in the Superior Court, and at that time the defendant, by then having the advantage of knowing what we had decided here, would undoubtedly move for and the trial justice would undoubtedly grant a direction in its favor. In the peculiar circumstances of this case we accept and apply the logic underlying the *Peterson* decision. To do otherwise would be to insist upon formalism even where to do so would serve no useful purpose. This does not mean that we encourage the kind of practice in which the trial justice indulged. In the long run, adherence to established rules will further the expeditious disposition of litigation. On the other hand, the adoption of innovating procedures not clearly or implicitly permitted, however logical they may seem to be, will entail the risk of reversal.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*SaoBento & SaoBento, Antonio SaoBento, Jr.,* for plaintiff.

*Gunning & LaFazia, Bruce M. Selya, John F. McDonough,* for defendant.