**UNITED STATES v. SCHIRESON.**

**No. 7447.**

Circuit Court of Appeals, Third Circuit.

Dec. 19, 1940.

Rehearing Denied Jan. 24, 1941.

882

David S. Malis, of Philadelphia, Pa., for appellant.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, and James P. McCormick, Ass't. U. S. Attys., all of Philadelphia, Pa., for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

Appellant, Henry J. Schireson, was convicted upon both counts of an indictment charging that he concealed assets from his trustee in bankruptcy and that he made a false oath with reference to his assets, in violation of section 29, sub. b(1) and (2) of the Bankruptcy Act of 1898, as amended in 1926, 44 Stat. 662, 11 U.S.C.A. § 52, sub. b(1, 2).

Schireson filed his voluntary petition in bankruptcy on April 22, 1937 in the Eastern District of Pennsylvania. His schedules listed assets of approximately $350 and liabilities totalling some $35,000. In June of 1939, the Collector of Internal Revenue seized the safety deposit box of the bankrupt's wife in the Merchantville National Bank and Trust Company of Mer-

chantville, N. J. With few exceptions the defendant's wife did not use her husband's name but was known as Rose or Rosalie Weinroberts, Wein-Roberts or Roberts. In the box was found property valued at approximately $130,000 consisting chiefly of securities, but including some cash, jewelry and policies insuring the life of the defendant for the benefit of his wife. In 1930 Schireson had transferred to Miss Roberts about $130,000 worth of securities. This transfer took place in Chicago where the parties then lived. Some years later Schireson came to Philadelphia and opened professional offices for the practice of plastic surgery. It seems that Miss Roberts has lived in Merchantville since 1935. The securities found in her safety deposit box were, for the most part, shown to have been acquired in exchange for the securities originally transferred to her by the defendant (or their proceeds), although about 20 per cent of the original securities still remained.

The government's theory was that while ostensibly this property belonged to Miss Roberts, in reality it was that of the bankrupt, while the defendant contended that he had made a valid prenuptial gift of the property to Miss Roberts. The trial of this case consumed approximately nine days. A great deal of testimony was offered regarding transactions involving transfer of assets by the defendant to Miss Roberts and other affairs of the defendant and Miss Roberts over a period of years. The contention of the prosecution is that this testimony established the ownership and virtual control over this property in the defendant with the transfer at most a trust for his benefit. The evidence of the government, if believed, was sufficient to establish its contention. The problem here is a typical one for the trier of the facts, and there is no object to be gained by outlining the testimony in this opinion.

The defendant complains that irrelevant testimony was received. While we do not understand that he insists that any particular part of this testimony was inflammatory or prejudicial he does contend that the sum total thereof tended to becloud the issues and confuse the jury. A short answer to this contention might be that the jury may as well have been confused in the defendant's favor as against him. It must be confessed as the transcript is read after the trial is over that some of

the testimony is a little hard to give probative weight to for any issue in the case. But it must be remembered that it is easier to determine what are the important issues in a case after a trial has occurred than before it, and we should hesitate to interfere in a field so largely within the discretion of the trial judge. The case was ably submitted to the jury in a charge which clearly brought out the issues. We find no occasion for correcting the discretion of the trial judge in this instance.

■ Nor was there any error in the trial court's definition of reasonable doubt. We have examined carefully the charge on this point and we believe it was adequate to give the jury, so far as words can do so, an understanding of what the concept of reasonable doubt is. We do not believe it to be the law that a trial judge must make this a matter of ritual and use the precise words found in a decision either in Pennsylvania or elsewhere.

■ ■ The defendant complains of a variance between the allegations of the indictment and the proof offered in that the most the government's proof tends to show is a secret trust by which the equitable ownership of certain property was retained by the defendant with the legal title therein passing to Miss Roberts. We find no merit in this contention. Part of it is based upon a concept of concealment growing out of the Gretsch case, elsewhere disapproved of in this opinion. Aside from that, however, it is perfectly clear that under the statute the trustee succeeds both to legal and equitable interests in property owned by the bankrupt at the time of the bankruptcy, provided that the bankrupt could have transferred that interest or the property could have been followed by the bankrupt's creditors. Thummess v. Von Hoffman, 3 Cir., 1940, 109 F.2d 293. The items of ownership were described with careful particularity in this indictment. There is no possible prejudice resulting to the defendant from proof establishing an equitable as distinguished from a legal title. The contention, therefore, is without substance. We agree with the trial court that United States v. Knopfer, D.C.M.D.Pa.1935, 12 F.Supp. 980, does not support the defendant's argument on this point and also agree with the trial court that if it did go so far we should not follow it.

■ There is also nothing to the contention that the indictment does not include the money received from payments of one Carlough. Proof regarding these payments is dealt with in another portion of this opinion where the relevant facts concerning the receipt of the money are stated. While this "Carlough" money is not mentioned by name in the indictment there is alleged concealment of "moneys, goods, wares and merchandise" followed by a description of what is explicitly said to be "a portion of said property". This count of the indictment concludes with the allegation that "a more particular description of said moneys, goods, wares and merchandise being to this Grand Inquest at present unknown". In view of this language we cannot accept the argument that the indictment charges only the concealment of the property specifically described.

■ This leads us to the two really important questions in this case. Defendant contends that the District Court for the Eastern District of Pennsylvania had no jurisdiction and to subject him to trial there violated his constitutional rights under the Sixth Amendment. This argument, although not so expressly stated, must apply only to the concealment count because, obviously, if there was a false oath it was made in Philadelphia. The basis for the argument upon the lack of jurisdiction on the concealment count is that the assets alleged to have been concealed by Dr. Schireson originally came from Illinois, were subsequently moved to New Jersey and were not shown ever to have been within Pennsylvania at any relevant time. The question is squarely raised whether a man can be guilty of the offense of concealing in the Eastern District of Pennsylvania when the physical things alleged to have been concealed are elsewhere.

It must be borne in mind that concealment is no crime until bankruptcy comes about. There can be no concealment from a trustee prior to the appointment of a trustee. United States v. Yasser, 3 Cir., 1940, 114 F.2d 558. A man who is not a bankrupt may have buried treasure all over the world. He commits no offense under the Bankruptcy Act. Certainly it was no indictable concealment to have valuable objects in a bank vault in New Jersey before bankruptcy. The wrongdoing came only after bankruptcy had super-

vened. But the acts which the defendant did thereafter were done in Pennsylvania.

In connection with the problem of analyzing what is involved in this offense it must be borne in mind that the word "conceal" does not mean merely to secrete or hide away. It means, also, "to prevent the discovery of or to withhold knowledge of". If a bankrupt owned land with an office building on it, it is hardly conceivable that he could physically hide it away. Yet there could be no doubt that he would be concealing this asset from the trustee in bankruptcy by failing to disclose his ownership. Suppose that the goods were on the New Jersey side of the line and the bankrupt and the trustee were on the Pennsylvania side of the line, and the bankrupt stood in the line of the trustee's vision in such a way that the latter could not see the objects in New Jersey. There can be no doubt that the concealment took place in Pennsylvania. So, here, if the bankrupt falsified his schedule of assets in Philadelphia he "withheld knowledge of" them from the trustee and thereby concealed them no matter where the goods were located.

The defendant in this case cites Gretsch v. United States, 3 Cir., 1916, 231 F. 57. That case involved a New Jersey bankrupt and New York assets; a majority of this court held, even though the point was made for the first time on appeal, that the prosecution would not lie in the District of New Jersey. The decision has received unfavorable comment in Léavitt, Federal Bankruptcy Act, Section 29, 11 Corn.L.Q. 300, 307; 16 Col.L.Rev. 602; 2 Collier on Bankruptcy, 14th Ed. 1940, 1153; see, however, 14 Michigan L.Rev. 673. While not expressly contrary we think the point of view of the court in Conetto v. United States, 9 Cir., 1918, 251 F. 42, and in United States v. Shapiro, 7 Cir., 1939, 101 F.2d 375, is distinctly in the opposite direction. To us the vigorous and cogent argument of Judge Buffington, dissenting in the Gretsch case, is convincing. We believe that Gretsch v. United States, supra, should be and it is overruled.

██ Defendant was indicted both for concealment and making a false oath. Making a false oath is an offense in itself. If the false oath also constitutes concealment it is arguable that there is a double punishment for the same act. One answer to this is that a man may frequently suffer two penalties for the same act if that act is the means of committing two offenses. If he kills two birds with one stone he can well be punished for killing each bird, if killing birds is an offense. If he unlawfully sets fire to a house he can be guilty of arson and also of the homicide of one who is burned to death while sleeping within it. Furthermore, while there may be some overlapping, the two offenses (concealment and false swearing) are different. False swearing under the statute is punishable at whatever stage of the bankruptcy proceedings it occurs. Furthermore, it is not the false oath which is the concealment any more than it is shooting of the gun which is the homicide. A falsified schedule of assets is the means by which the concealment is accomplished. The defendant was properly prosecuted on both counts in the Eastern District of Pennsylvania.

### The Carlough Checks.

In 1936 a man named Carlough arranged for certain professional work by Dr. Schireson and an associate, Dr. Smilie, to be performed upon Mrs. Carlough. The work was done. Pursuant to the arrangement made Carlough delivered three checks to Dr. Schireson, one for $2,000 in July of 1936, and two for $1,000 each in August and November, 1936. These checks were endorsed by Dr. Schireson and deposited by Miss Roberts in her personal account in the Merchantville bank. It is the theory of the government that Dr. Schireson had placed this money in his wife's hands, in contemplation of bankruptcy, in order to conceal it from his creditors. The defendant contended that the checks were turned over to his wife in payment of debts due her by Dr. Smilie and himself.

The trial court submitted fairly and adequately the fact issues between the parties with regard to these Carlough checks, adding that if the jury believed that it was Dr. Schireson's money and that he concealed it by putting it in Miss Roberts' possession, in contemplation of bankruptcy, and did not schedule it, then he, the defendant, could be convicted on both counts.

██ It may well be within the power of Congress to declare that one who, within the shadow of the approaching specter of bankruptcy, gives away his assets may be guilty of a crime. But it is neither the crime of concealment nor false swearing with regard to assets on hand at the time the bankruptcy occurs. As said above there cannot be concealment of assets from a

trustee until there is a trustee. United States v. Yasser, supra. Even if the defendant did give this Carlough money to Miss Roberts in contemplation of bankruptcy and, accepting the government's theory, retained equitable ownership therein himself, he is not guilty of concealing it unless the funds were on hand when the point of bankruptcy was reached. While the government's evidence traced with care the course of dealing in the securities turned over by the defendant to Miss Roberts in 1930, there was no evidence that any of this Carlough money remained in her possession at the time of the bankruptcy. Several months had elapsed in the meantime. Under these circumstances the inference that there was anything left from this $4,000 in Miss Roberts' hands on April 22, 1937, when the money had been turned over in the summer and fall of 1936, is not one which can be drawn without more proof than the mere turning over of the money. Reiner v. United States, 9 Cir., 1937, 92 F.2d 823. A careful search of the entire transcript fails to reveal any such proof. Since the jury were told that they could convict on the testimony with regard to these checks we feel that the defendant has been prejudiced and the case must go back for a new trial.

The judgment is reversed, and a new trial ordered.