ROSS, Circuit Judge.
 

 Thomas R. Brimberry was convicted on two counts of bankruptcy fraud and on five counts of perjury before a grand jury. On appeal, Brimberry raises three arguments to each of the offenses. With respect to the bankruptcy fraud offense, he challenges the venue of his trial, raises an immunity defense, and argues that the court erred in instructing the jury on the elements of the offense. With respect to the perjury counts, Brimberry argues that his false statements to the grand jury were not material, that he was improperly indicted by the same grand jury before which he had made his perjurious statements, and that the court improperly admitted evidence of a prior conviction. We reverse Brimberry’s conviction on one of the bankruptcy fraud counts on the basis that the court improperly instructed the jury, affirm his conviction on the other bankruptcy fraud count, and affirm his conviction on all of the perjury counts.
 

 FACTS
 

 Brimberry played a central role in a scheme to embezzle money from Stix & Company (Stix), a St. Louis brokerage firm. We have previously considered the convictions of two of Brimberry’s partners in the scheme, James Massa and Duane Skinner, as well as the conviction of a coworker, Leonard Bednar.
 
 See United States v. Massa,
 
 740 F.2d 629 (8th Cir.1984);
 
 United States v. Bednar,
 
 728 F.2d 1043 (8th Cir.),
 
 cert. denied,
 
 — U.S. -, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). Although this appeal does not involve a conviction for embezzlement, some background to the embezzlement is necessary to an understanding of this case. The following statement of facts from our decision in
 
 Massa
 
 serves this purpose:
 

 The scheme to loot Stix and spend the money without being detected by the IRS and other governmental agencies was complex, involving some acts in and of themselves not illegal except that they were financed with misappropriated funds. At the center of the scheme was Brimberry and his manipulation of the margin accounts at Stix. As a margin clerk at Stix, Brimberry was responsible for properly maintaining the margin accounts and making sure that they were backed by adequate collateral. In about 1976, he began to make false entries into ten margin accounts, showing the receipt of nonexistent fully paid securities into the accounts. The ten accounts included five controlled by Brimberry, in various straw names; two accounts in the name of Jerry Maeras, an associate of Brim-berry’s; two accounts in Massa’s name; and one account in the name of Arthur Miller, Jr., Brimberry’s brother-in-law. The false entries allowed the purported owners of the accounts to withdraw huge sums of money from Stix. Over the life of the scheme, over $16 million was embezzled from Stix in this manner.
 

 * * * * * *
 

 
 *1342
 
 In order for the scheme to grow to the dimensions that it eventually did, it was necessary for members of the scheme to gain control of the Stix firm. During 1979, Massa purchased controlling interest in Stix using approximately $1 million Brimberry embezzled from the ten padded margin accounts.
 

 ifc Sfc Jjí }js Sji
 

 After buying controlling interest in the firm, Massa removed the chief financial officer and another person from the board of directors and added Brimberry. He further promoted Brimberry to senior vice president in complete charge of the operations section of the firm — the section that oversaw the major accounts and the flow of cash from the firm.
 

 * * * tfs # *
 

 From about 1978 to 1981, participants in the scheme began to exhibit a more lavish lifestyle. Brimberry, Massa, Skinner and others took frequent trips to Las Vegas together, sometimes as often as twice a month. They also traveled on more than one occasion to Hawaii, Disney World, the Bahamas, and Monte Carlo. Brimberry was building a very expensive home in Granite City, Illinois.
 

 # jjc s(s s}c M* &
 

 Another facet of the overall scheme to loot Stix and spend the money undetected was the creation of corporations fronted by Skinner for Brimberry. The largest of these was Miller Excavating, Inc. Massa incorporated this company and was an officer, director and shareholder. Arthur Miller, Jr., and Maeras were also officers and Skinner acted as president from 1978 until approximately 1981. More than $1.3 million of Stix money went to fund the operations and purchase of heavy equipment for the company. In 1980 and 1981, the name of the corporation was changed first to Ber-nate, Inc., and then to MZA, Inc. Brim-berry continued to fund the corporation with Stix money and Skinner continued to act as president.
 

 Id.
 
 at 633-35.
 

 Brimberry’s extravagent lifestyle raised suspicions with the IRS and spawned an IRS investigation into Brimberry’s financial dealings. Realizing that his scheme would soon be discovered, Brimberry entered into a plea agreement with the government on November 2, 1981. Immediately thereafter, Brimberry began to disclose the details of the Stix fraud. It was only then that the investigators discovered the enormity of the Stix fraud and Brim-berry’s central role in the fraud.
 

 Upon disclosure of the Stix fraud, the Securities and Exchange Commission and the Securities Investor Protection Corporation filed a joint application in the United States District Court for the Eastern District of Missouri. The application sought a protective decree with respect to Stix pursuant to the Securities Investor Protection Act (SIPA), 15 U.S.C. §§
 
 78aaa-III
 
 (1982).
 
 See
 
 15 U.S.C. § 78eee (1982).
 

 The district court determined that Stix’s customers were in need of protection under the SIPA and appointed Harry 0. Moline as trustee for the liquidation of Stix. Orders were entered on November 5 and November 9, 1981, enjoining officers, directors and employees of Stix from removing, selling or otherwise disposing of assets of Stix. The case was then assigned to the United States Bankruptcy Court for the Eastern District of Missouri.
 
 See
 
 15 U.S.C. § 78eee(b)(4) (1982).
 

 In February of 1982, Brimberry had approximately $600,000 worth of construction equipment owned by Miller Excavating Company moved to Laredo, Texas for sale in Mexico. Approximately $284,000 of the equipment had been purchased directly with funds stolen from Stix; the remainder of the equipment had been purchased with Miller Excavating Company funds, a corporation which was funded with money stolen from Stix. This equipment was sold for $304,000.
 

 Later, in October of 1982, Brimberry had stained glass windows, light fixtures, and a
 
 *1343
 
 generator removed from his mansion in Granite City, Illinois. The items were taken to Salem, Illinois and stored by Joe Hotze, an automobile dealer.
 

 These facts formed the basis for counts 9 and 10 of the indictment, which alleged that Brimberry fraudulently concealed and transferred property belonging to Stix in violation of 15 U.S.C. § 78jjj(e)(l) and (2). This statute provides, in relevant part, as follows:
 

 (c) Concealment of assets; false statements or claims.—
 

 (1) Specific prohibited acts. — Any person who, directly or indirectly, in connection with or in contemplation of any liquidation proceeding or direct payment procedure—
 

 (C) fraudulently or with intent to defeat this chapter—
 

 (i) conceals or transfers any property belonging to the estate of a debtor;
 

 ******
 

 shall be fined not more than $50,000 or imprisoned for not more than five years, or both.
 

 (2) Fraudulent conversion. — Any person who, directly or indirectly steals, embezzles, or fraudulently, or with intent to defeat this chapter, abstracts or converts to his own use or to the use of another any of the moneys, securities, or other assets of SIPC, or otherwise defrauds or attempts to defraud SIPC or a trustee by any means, shall be fined not more than $50,000 or imprisoned not more than five years, or both.
 

 Specifically, count 9 charged Brimberry with selling the construction equipment after the liquidation proceedings had commenced and using the proceeds for his personal use. Count 10 charged Brimberry with removing stained glass windows, light fixtures, and a generator from his mansion in Granite City, Illinois after the liquidation proceedings had commenced and concealing the items in another location.
 

 The remaining counts involved in this appeal (counts 3, 5, 6, 7 and 8) relate to Brimberry’s testimony before a grand jury which had convened in February of 1982 in the Eastern District of Missouri to investigate the Stix fraud. The indictment charged Brimberry with knowingly making false material statements before this grand jury on April 7th and 8th of 1982 in violation of 18 U.S.C. § 1623.
 

 DISCUSSION
 

 A. Bankruptcy Fraud
 

 1. Venue
 

 Prior to trial, Brimberry filed a motion to dismiss counts 9 and 10 on the basis that the Eastern District of Missouri was not a proper venue for his trial. Brim-berry now contends that the court erred in not granting the motion. He argues that he did not commit the crime of bankruptcy fraud in the Eastern District of Missouri because he did not sell the construction equipment in Missouri, hide the windows, light fixtures, or generator in Missouri, or remove such property from Missouri.
 
 See
 
 U.S. CONST. ART. Ill, § 2, cl. 3; U.S. CONST. AMEND. VI; FED.R.CRIM.P. 18 (venue lies in district where crime committed). The government, on the other hand, argues that the crime was committed in the Eastern District of Missouri because the Stix liquidation proceeding was located in that district.
 

 The bankruptcy fraud statute at issue here, 15 U.S.C. § 78jjj, does not contain a venue provision fixing the place of trial for violations of the statute. “Since the statute does not indicate where Congress considered the place of committing the crime to be * * * the
 
 locus delicti
 
 must be determined from the nature of the crime alleged and the location of the act or acts constituting it.”
 
 United States v. Anderson,
 
 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946).
 

 There are no reported cases discussing the proper venue for a section 78jjj prosecution. Brimberry argues, however, that cases involving obstruction of justice prosecutions provide a useful analogy for resolving the
 
 locus delicti
 
 issue. The government adds that cases involving proseeu-
 
 *1344
 
 tions for bankruptcy fraud in chapter 11 bankruptcy proceedings, 18 U.S.C. § 152, also provide a useful analogy.
 

 First, we deal with Brimberry’s analogy to obstruction of justice cases. This circuit has not had an opportunity to determine the proper venue for obstruction of justice prosecutions where the acts of obstruction took place in a different district than that in which the proceeding sought to be obstructed is pending. The Second Circuit, however, recently addressed this issue in the context of obstruction of justice charges brought under 18 U.S.C. § 1503.
 
 United States v. Reed,
 
 773 F.2d 477 (2d Cir.1985). The court first observed the split amongst the circuits in this area, stating:
 

 The circuits are split on the issue of proper venue for obstruction of justice in cases where the acts occur in a district other than that in which the proceeding sought to be obstructed is pending. The First, Fourth, Sixth and Eleventh circuits have held that venue lies in the district in which the proceeding sought to be obstructed was pending.
 
 United States v. Tedesco,
 
 635 F.2d 902, 904-06 (1st Cir.1980), ce
 
 rt. denied,
 
 452 U.S. 962 [101 S.Ct. 3112, 69 L.Ed.2d 974] (1981);
 
 United States v. Kibler
 
 667 F.2d 452, 454-55 (4th Cir.),
 
 cert. denied,
 
 456 U.S. 961 [102 S.Ct. 2037, 72 L.Ed.2d 485] (1982);
 
 United States v. Scaife,
 
 749 F.2d 338, 346 (6th Cir.1984);
 
 United States v. O’Donnell,
 
 510 F.2d 1190, 1192-94 (6th Cir.),
 
 cert. denied,
 
 421 U.S. 1001 [95 S.Ct. 2400, 44 L.Ed.2d 668] (1975);
 
 United States v. Johnson,
 
 713 F.2d 654, 658-59 (11th Cir.1983),
 
 cert. denied,
 
 [— U.S. -] 104 S.Ct. 1295 [79 L.Ed.2d 695] (1984);
 
 United States v. Barham,
 
 666 F.2d 521, 523-24 (11th Cir.),
 
 cert. denied,
 
 456 U.S. 947 [102 S.Ct. 2015, 72 L.Ed.2d 470] (1982). This circuit, the Seventh, and the District of Columbia Circuits have held that venue lies only where the acts of obstruction occur.
 
 United States v. Brothman,
 
 191 F.2d 70, 72-73 (2d Cir.1951);
 
 United States v. Nadolny,
 
 601 F.2d 940, 942-43 (7th Cir.1979);
 
 United States v. Swann,
 
 441 F.2d 1053, 1055 (D.C.Cir.1971).
 
 See also United States v. Wilson,
 
 565 F.Supp. 1416, 1423-24 (S.D.N.Y.1983);
 
 United States v. Bachert,
 
 449 F.Supp. 508 (E.D.Pa.1978).
 

 Id.
 
 at 484-85. The court then proceeded to overrule its prior precedent on the issue,
 
 United States v. Brothman,
 
 on the basis that “the source of federal jurisdiction and the locus of harm are in the district of the pending parent proceeding” which the defendant sought to obstruct.
 
 Id.
 
 at 486.
 

 Brimberry’s analogy to obstruction of justice cases does not provide much support for his contention that venue was improper in this case, regardless of the accuracy of the analogy, as five of the seven circuits which have addressed the issue have determined that venue is proper in the district where the proceeding sought to be obstructed is pending even though the defendant’s acts of obstruction occurred in a different district. Hence, we turn to the government’s analogy.
 

 The government’s analogy to prosecution for violations of 18 U.S.C. § 152 is very close. The only substantial difference between 18 U.S.C. § 152 and 15 U.S.C. § 78jjj for our purposes here is that the former involves chapter 11 bankruptcy proceedings, while the latter involves liquidation proceedings brought under the SIPA. A congressional statement indicating the similarities between the statutes is found in an excerpt from a Senate Report summarizing the most recent bill amending the SIPA:
 
 “Drawing on concepts developed in
 
 connection with bankruptcy proceedings (see,
 
 18 U.S.C. § 152) the bill
 
 makes it a criminal offense to defraud or to attempt to defraud any person and
 
 makes criminal under SIPA any act which would be criminal if taken in relation to a bankruptcy proceeding.”
 
 S.REP. 763, 95th CONG., 2d SESS., 15,
 
 reprinted in
 
 1978 U.S.CODE CONG. & AD.NEWS 764, 778 (emphasis added). In addition, the SIPA in general draws heavily upon the Bankruptcy Act in other important matters.
 
 See
 
 15 U.S.C. §§ 78fff(b), fff-l(a) (SIPA “liquidation proceeding shall be conducted in accordance with, and as though it were being conduct
 
 *1345
 
 ed under” the Bankruptcy Act; SIPA trustee given same powers and title with respect to the debtor and the debtor’s property as a Bankruptcy Act trustee). Thus, cases determining the proper venue for prosecutions under 18 U.S.C. § 152 are particularly helpful for determining the proper venue for prosecutions under 15 U.S.C. § 78jjj.
 

 In
 
 United States v. Schireson,
 
 116 F.2d 881 (3d Cir.1940), the court was directly faced with the issue of whether venue for a violation of section 152 existed in the district in which the bankruptcy proceeding was located even though the overt acts of concealment took place in a different district. The court held that venue was proper in the district in which the bankruptcy proceeding was located, reasoning as follows:
 

 In connection with the problem of analyzing what is involved in this offense it must be borne in mind that the word “conceal” does not mean merely to secrete or hide away. It means, also, “to prevent the discovery of or to withhold knowledge of”. If a bankrupt owned land with an office building on it, it is hardly conceivable that he could physically hide it away. Yet there could be no doubt that he would be concealing this asset from the trustee in bankruptcy by failing to disclose his ownership. Suppose that the goods were on the New Jersey side of the line and the bankrupt and the trustee were on the Pennsylvania side of the line, and the bankrupt stood in the line of the trustee’s vision in such a way that the latter could not see the objects in New Jersey. There can be no doubt that the concealment took place in Pennsylvania. So, here, if the bankrupt falsified his schedule of assets in Philadelphia he “withheld knowledge of” them from the trustee and thereby concealed them no matter where the goods were located.
 

 Id.
 
 at 884. The court also overruled prior precedent to the contrary,
 
 Gretsch v. United States,
 
 231 Fed. 57 (3d Cir.1916).
 
 Schireson
 
 has been followed by the Second and Seventh circuits,
 
 United States v. Martin,
 
 408 F.2d 949, 952-53 (7th Cir.1969);
 
 United States v. Gordon,
 
 379 F.2d 788, 791 (2d Cir.1967);
 
 United States v. Greenstein,
 
 153 F.2d 550, 551 (2d Cir.1946), and the above quoted excerpt has been quoted with apparent approval by this court.
 
 Coghlan v. United States,
 
 147 F.2d 233, 237 (8th Cir.),
 
 cert. denied,
 
 325 U.S. 888, 65 S.Ct. 1569, 89 L.Ed. 2001 (1945). In addition, a noted bankruptcy treatise has commented approvingly on the case:
 

 The position taken by the court in the
 
 Schireson
 
 case makes the situs of the concealed property immaterial. The important question is where the bankruptcy proceeding is commenced. This is the better view as it recognizes that the offense contemplated by the first paragraph of § 152 is not simply the secreting of property, but rather the concealment of property from the trustee, or other officer enumerated in the section, during the pendency of a bankruptcy proceeding.
 

 2A W. Collier,
 
 Bankruptcy
 
 ¶ 29.05[2.2] at 1163 (14th ed.). We find the reasoning in
 
 Schireson
 
 convincing and accordingly, adopt the position that in cases of concealment, venue exists in the district where the bankruptcy proceeding is located. Since both counts 9 and 10 charged Brimberry with concealing property of the estate of Stix, and the Stix liquidation proceeding was located in the Eastern District of Missouri, venue was proper in that district.
 

 2. Immunity
 

 Brimberry also filed a pretrial motion to dismiss counts 9 and 10 on the basis that the charges were barred by the immunity agreement which he entered into on November 2, 1981. Brimberry later added a request for an order excluding the admission of all evidence arising either directly or indirectly out of testimony which he gave pursuant to the immunity agreement.
 

 Pursuant to the November 2, 1981 immunity agreement, Brimberry agreed to testify fully and completely before any grand jury investigating violations of the United States Code which he had information on,
 
 *1346
 
 to provide testimony in any trial arising from his testimony before the grand juries, and to plead guilty to a false tax return charge. The government, in turn, agreed not to prosecute Brimberry “for, or on account of” any information he provided, other than for perjury, and stipulated that a prosecution of Brimberry “that in any way, directly or indirectly, resulted from testimony given by [him] * * * shall be * * a bad faith prosecution * * *.” The agreement explained that “the non-prosecution protections of this Agreement are in lieu of any protection that would be afforded Thomas R. Brimberry * * * if the United States of America applied to the Court for an Order Compelling Testimony under Title 18, United States Code, Sections 6001-6005.”
 

 Brimberry’s pretrial motion was referred to a magistrate who recommended that the motion be denied because the charges “clearly allege criminal acts occurring after the plea agreement was entered into.”
 
 United States v. Brimberry,
 
 No. S1-82-312CR(4), slip op. at 2-8 (E.D.Mo. Feb. 22, 1984). The magistrate found this fact controlling, reasoning:
 

 [T]he terms of the plea agreement’in the present case do not lend themselves to * * * an interpretation [“immunizing him from prosecution for future criminal acts”]. The agreement neither explicitly nor implicitly states that it shall apply to future criminal acts. Thus the plea agreement clearly does not emcompass or govern the subsequent criminal acts charged in Counts * * * [9] and [10].
 

 Id.
 
 at 3. In addition, the magistrate recommended that Brimberry’s motion be denied on the ground that the immunity agreement had been materially breached by Brimberry and thereby rendered unenforceable. The breach consisted of a failure to fully cooperate with the government, as indicated by Brimberry’s prior conviction for obstruction of justice in the Southern District of Illinois. The trial judge adopted the magistrate’s recommendation and denied the motion.
 

 When considering Brimberry’s conviction for obstruction of justice, the Seventh Circuit remanded the case to the trial court for a determination of whether the prosecution was precluded by the same immunity agreement involved in this appeal.
 
 United States v. Brimberry,
 
 744 F.2d 580 (7th Cir.1984). On remand, the trial court upheld Brimberry’s conviction on the grounds that: 1) the government’s case was based on evidence obtained independently of Brimberry’s cooperation, 2) Brimberry had breached the immunity agreement by “lying before the very Grand Juries to which he agreed to testify fully and completely”,
 
 United States v. Brimberry,
 
 Criminal No. 82-50034, slip op. at 13 (S.D.Ill. Apr. 17, 1985), and by obstructing justice in violation of his obligation to cooperate fully with the federal investigators, and 3) the immunity agreement did not apply to obstruction of justice charges because the charges “relate * * * to events that took place after his agreement and which were not directly related to the Stix fraud.”
 
 Id.
 
 at 16.
 

 In this case, the magistrate made a finding that the immunity agreement did not extend to future criminal acts such as those charged in counts 9 and 10. This finding is supported by the fact that “a grant of use immunity does not immunize the witness from prosecution for an act committed subsequent to the granting of the immunity.”
 
 United States v. Caron,
 
 551 F.Supp. 662, 672 (E.D.Va.1982).
 
 See United States v. Bryan,
 
 339 U.S. 323, 340, 70 S.Ct. 724, 735, 94 L.Ed. 884 (1950) (“Congress intended the immunity * * * to apply only to
 
 past
 
 criminal acts concerning which the witness should be called to testify”; prosecution for contempt occurring after such acts was permitted);
 
 Glickstein v. United States,
 
 222 U.S. 139, 142, 32 S.Ct. 71, 73, 56 L.Ed. 128 (1911) (crime of perjury not immunized because immunity relates to past crimes);
 
 United States v. Housand,
 
 550 F.2d 818, 822 (2d Cir.1977) (same). Although there is broad language in the immunity agreement between Brimberry and the government, there is nothing in the agreement which supports an intention to
 
 *1347
 
 grant Brimberry immunity to violate the law in the future. Since counts 9 and 10 involved acts which took place after November 2, 1981, the immunity agreement did not apply to those charges. Thus, the trial court properly denied Brimberry’s motion.
 

 3. Jury Instructions
 

 Brimberry argues that the trial court failed to properly instruct the jury on two of the elements of the bankruptcy fraud offense charged in counts 9 and 10. First, Brimberry contends that the instruction on the elements of bankruptcy fraud failed to require the jury to find that Brim-berry’s fraudulent acts were made “in connection with or in contemplation of any liquidation proceeding.” 15 U.S.C. § 78jjj(c)(1).
 
 [1]
 
 The instruction read as follows:
 

 Four essential elements are required to be proven in order to establish the offense charged in Counts IX and X of the indictment.
 

 First: That at the time and place alleged in the indictment,
 
 there existed a liquidation proceeding
 
 in bankruptcy court as charged;
 

 Second: That certain property or assets belonged to the estate of Stix & Co., as alleged in the indictment;
 

 Third: That the accused concealed or transferred said property
 
 from the estate of Stix & Co.
 
 and its trustee.
 

 Fourth: That the accused did said acts knowingly, willfully, and fraudulently.
 

 Instruction No. 22 (emphasis added).
 
 [2]
 
 In addition, the court also gave the following instruction:
 

 Before a defendant may be found to have concealed property, belonging to the estate of a debtor, “knowingly” and “fraudulently”,
 
 the evidence in the case must establish beyond a reasonable doubt that the accused either had actual knowledge that the bankruptcy proceeding referred to in the indictment was pending, or had willfully closed his eyes to facts which would have made existence of such bankruptcy proceeding obvious to him;
 
 and that he thereafter willfully concealed or transferred property or money, with the intent to deceive and defraud the debtor Stix & Co., as charged.
 

 Instruction No. 25 (emphasis added). Reading the instructions as a whole, we are satisfied that the court adequately apprised the jury of the “in connection with or in contemplation of any liquidation proceeding” element.
 
 See Crimm v. Missouri Pacific Railroad Co.,
 
 750 F.2d 703, 710-11 (8th Cir.1984) (instructions must be read as a whole).
 

 Brimberry also contends that the court erroneously instructed the jury on the “property belonging to the estate of a debt- or” element of 15 U.S.C. § 78jjj(c)(l)(C)(i) when it gave the following instruction:
 

 You must find as to Counts IX and X that some portion of the property allegedly concealed were assets of the estate of Stix. If you find that any valuable portion of the items charged were pur
 
 *1348
 
 chased with money stolen from Stix, then you may find that they were assets of Stix & Co.
 

 Instruction No. 28. Following this instruction, the jury was required to trace the money which Brimberry stole from Stix. Items which were traceable to the stolen money were deemed property of the estate of Stix on the theory that Stix had a right to impose a constructive trust on such property.
 
 See generally
 
 D. Dobbs,
 
 Remedies,
 
 at 423-25 (1973); Restatement of Restitution § 202 (1936).
 

 Brimberry contends that the instruction employed an overly broad reading of the statute. The phrase “property belonging to the estate of a debtor” should be interpreted narrowly, Brimberry asserts, because the phrase was not defined in the statute and the ordinary meaning of the phrase does not encompass assets which a trustee may acquire title to in a legal proceeding.
 
 See United States v. Bass,
 
 404 U.S. 336, 347-48, 92 S.Ct. 515, 522-23, 30 L.Ed.2d 488 (1971) (“ ‘ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.’ ”).
 

 The government responds that the instruction was proper because cases interpreting an analogous bankruptcy fraud statute, 18 U.S.C. § 152, have interpreted the phrase “property belonging to the estate of a bankrupt” to include both legal and equitable interests in property owned by the bankrupt.
 
 See, e.g., United States v. Moynagh,
 
 566 F.2d 799, 803 (1st Cir.1977), ce
 
 rt. denied,
 
 435 U.S. 917, 98 S.Ct. 1475, 55 L.Ed.2d 510 (1978). Stix possessed an equitable interest in the property involved in this case, the government asserts, because an embezzler cannot obtain title to stolen money and property purchased with such money is held by the embezzler in constructive trust for the victim.
 
 See Atlas, Inc. v. United States,
 
 459 F.Supp. 1000, 1004-05 (D.N.D.1978) (applying North Dakota statute).
 

 We disagree with the government’s argument. When an embezzler purchases property with stolen funds, the property may be subjected to a eonstruc-tive trust in favor of the victim. Until a court grants the victim such a constructive trust remedy, however, the victim merely has a right to seek such a remedy. A right to seek a constructive trust over specific property is a property interest in itself,
 
 see
 
 4 W. Collier,
 
 Bankruptcy
 
 ¶ 541.10 (15th ed.) (bankruptcy estate includes causes of action belonging to the debtor), but the existence of such a right does not establish an interest in the specific property. Thus, we conclude that the court erred when it instructed the jury that assets traceable to money stolen from Stix were assets of the estate of Stix.
 

 Under the evidence the constructive trust theory embodied in instruction No. 28 formed the only basis for a finding that the construction equipment involved in count 9 was property of the Stix estate. Since this theory was not properly submitted, we reverse Brimberry’s conviction on count 9.
 

 As to count 10, however, there was additional uncontroverted evidence to support the finding that the windows, light fixtures, and generator removed from the Granite City mansion were property of the Stix estate. On February 23,1982, the Stix trustee had filed a complaint in bankruptcy court against Brimberry seeking,
 
 inter alia,
 
 to impose a constructive trust over property which Brimberry had purchased with stolen Stix funds. This action resulted in the entry of a consent order by the bankruptcy court on August 13, 1982 “enjoining Brimberry * * * from disposing of any real property in which he * * * [has] any legal or beneficial interest, * *
 
 In re Stix & Co.,
 
 27 B.R. 252, 253 (Bankr.E.D.Mo.1983). On the same day, Brimberry filed a report with the bankruptcy court by which he agreed to convey the Granite City mansion to the Stix trustee.
 
 Id.
 
 at 253 & n. 3. This agreement to convey clearly gave the Stix trustee a property interest in the mansion and fixtures involved in count 10 sufficient to satisfy the “property belonging to the estate of a debtor” element of 15 U.S.C. § 78jjj(c)(l)(C)(i). Accordingly, we conclude that the error in instruction No. 28 was harmless with respect to count
 
 *1349
 
 10, and we affirm Brimberry’s conviction on this count.
 

 B. Perjury
 

 1. Materiality
 

 In appealing his conviction on the perjury counts (counts 3, 5, 6, 7 and 8) Brimberry first argues that a new trial or a remand for findings is necessary because the trial court failed to find that his false statements to the grand jury were material. It is established that “[t]he question of whether the government has met its burden on the issue of materiality is for the court to decide as a matter of law.”
 
 United States v. Bednar, supra,
 
 728 F.2d at 1047. As a question of law, materiality is subject to a “yes” or “no” answer.
 
 United States v. Armilio,
 
 705 F.2d 939, 941 (8th Cir.),
 
 cert. denied,
 
 464 U.S. 891, 104 S.Ct. 235, 78 L.Ed.2d 227 (1983).
 

 Following the above law, the trial court in this case read an instruction to the jury on the elements of perjury which stated: “Materiality is not an issue for the jury to decide.” Instruction No. 18. The instruction, which had been submitted by Brimber-ry, did not contain a statement that materiality was established.
 
 Compare
 
 2 E. Dev-itt and C. Blackmar,
 
 Federal Jury Practice and Instructions,
 
 § 33.05 at 91 (3d ed. 1977).
 

 The record in this case indicates that the court did not issue a specific finding of materiality. By submitting the perjury counts to the jury, overruling Brimberry’s motions for acquittal and his motion for a new trial, and entering a judgment convicting Brimberry of the perjury charges, however, the court necessarily made a finding that materiality was established. Although the record shows that Brimberry never sought a specific finding of materiality, we cannot assume that the court overlooked the issue. First, the government had provided the trial court with the grand jury transcript prior to trial, had the grand jury’s deputy foreman testify at trial regarding the scope of the grand jury investigation, and had filed a brief arguing that materiality was established. In addition, the trial court itself had recognized that it had a duty to decide the materiality issue.
 
 See
 
 Instruction No. 18. While a specific finding on the materiality element is desirable from the standpoint of appellate review, Brimberry has not raised, and we fail to find, any constitutional or statutory right to such a finding in this ease. In sum, we find that the trial court’s implied finding of materiality was sufficient in this case.
 

 Brimberry next contends that the court erred in finding that his false statements to the grand jury were material. “The test for determining materiality is whether the allegedly perjurious statement tends to impede or hamper the course of the investigation by the grand jury.”
 
 United States v. Bednar, supra,
 
 728 F.2d at 1047.
 

 The first matter to examine is the scope of the grand jury’s investigation. The government established, through the testimony of the deputy foreman of the grand jury investigating the Stix fraud, that the scope of the investigation included “how much had been taken, who was involved in the scheme, [and] what happened to the securities or the money that was taken from Stix.” Trial Trans. 4-177.
 
 Compare id.
 
 at 1046 (scope of grand jury investigation as established in Leonard Bednar’s case, a Stix employee who was convicted of making perjurious statements before the same grand jury involved in this case).
 

 The second matter to examine is how the false testimony may have impeded the grand jury’s investigation. This examination requires a separate analysis of each perjury count.
 

 Count 3 charged Brimberry with falsely testifying that Duane Skinner, Brimberry’s tax preparer, did not know about the Stix fraud. Specifically, Brim-berry was charged with making the following false answer:
 
 “Question:
 
 Mr. Skinner knew you had stock accounts at Stix & Co., didn’t he?
 
 Answer:
 
 No, not to my knowledge.” Brimberry’s answer was alleged to be false because Brimberry “knew that Duane Skinner was aware that Thomas R.
 
 *1350
 
 Brimberry directly and indirectly maintained stock and other accounts at Stix.”
 

 It is established that “ ‘[p]recise questioning is imperative as a predicate for the offense of perjury.’ ”
 
 United States v. Lasater,
 
 535 F.2d 1041, 1049 (8th Cir.1976)
 
 (quoting Bronston v. United States,
 
 409 U.S. 352, 362, 93 S.Ct. 595, 601, 34 L.Ed.2d 568 (1973)). Here, Brimberry was only asked whether Skinner knew he “had” stock accounts at Stix. As such, he asserts that the question only referred to stock accounts in his own name, not to stock accounts which he controlled. Since the stock accounts which Brimberry had in his own name were not a part of the fraud, his answer was not material, he contends, because a truthful answer would not have implicated Skinner in the Stix fraud.
 

 We disagree. Even if we read the question as narrowly as Brimberry suggests, Brimberry’s false answer was material because the denial of Skinner’s knowledge of legitimate stock accounts would tend to impede or hamper the investigation into whether Skinner had knowledge of the stock accounts used in the fraud.
 

 Count 5 charged Brimberry with falsely testifying that Art Miller, Jr. possessed the originals of checks written from the Rimco account (one of the accounts used in the fraud). In fact, Brimberry had directed Miller to destroy the Rimco account records, including checks written from the account, in October of 1981 and had been informed that his directions had been followed.
 
 [3]
 
 As such, Brimberry knew that Miller did not possess the checks.
 

 Brimberry argues that his answer was not material because he provided information which enabled the government to get the records from another source. Nevertheless, Brimberry’s false answer misled the grand jury into believing that material evidence was in a place where it was not. On its face, such a falsity would tend to impede an investigation.
 
 See United States v. Williams,
 
 552 F.2d 226, 230 (8th Cir.1977) (fact that grand jury had other evidence on an issue did not render defendant’s false testimony on that issue immaterial);
 
 United States v. Beitling,
 
 545 F.2d 1106, 1110 (8th Cir.1976),
 
 cert. denied,
 
 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1977) (same).
 

 Count 6 charged Brimberry with falsely stating: “I believe to have ten thousand shares of King International stock that Jerry Maeras has possession of that is half mine and half his.” In fact, all of the King International stock was Brimberry’s.
 

 ' Brimberry argues that his false statement was not material because he had previously testified that Maeras was deeply involved in the Stix fraud and that the King International stock was purchased with stolen money. The question of who actually owned the stock, Brimberry contends, was irrelevant to the grand jury’s investigation.
 

 We disagree. The question of who benefited from the Stix fraud was within the proper scope of the grand jury’s investigation because such evidence would tend to indicate involvement in the fraud. Since Brimberry’s false declaration misled the grand jury on an issue within the scope of its investigation, it was material. Further, the fact that the grand jury had other evidence linking Maeras to the crime does not render Brimberry’s false statement immaterial.
 
 See United States v. Williams, supra,
 
 552 F.2d at 230;
 
 United States v. Beitling, supra,
 
 545 F.2d at 1110.
 

 Count 7 charged Brimberry with falsely testifying that he did not give money to anybody, other than Dick Kaydas, to buy and hold securities for him. In fact, Brimberry had given money to two other individuals for this purpose.
 

 Brimberry argues that this lie was not material because it has never been alleged that these other two individuals were involved in the fraud. It may be true that
 
 *1351
 
 these other two individuals were not knowing participants in Brimberry’s efforts to conceal the Stix fraud by placing some of the Stix fraud proceeds with others in a “trust” arrangement. Nevertheless, Brim-berry’s false statement impeded the grand jury’s efforts to discover whether this was so and, as such, impeded the grand jury’s investigation.
 
 See United States v. Beitling, supra,
 
 545 F.2d at 1110.
 

 Count 8 charged Brimberry with falsely testifying that Bill Swanson, a Stix employee, played a willing role in James Massa’s scheme to obtain control of Stix. Brimber-ry argues that this lie was not material because Massa’s scheme to obtain control of Stix was not unlawful. Even accepting this proposition, we conclude that the lie was material because the take-over was an important part of the embezzlers’ efforts to conceal this fraud.
 

 2. Same Grand Jury
 

 Brimberry was indicted by the same grand jury before which he made his perjurious statements. His attorney alleges that he did not discover this fact until the government questioned its final witness — the grand jury’s deputy foreman. Immediately thereafter, Brimberry’s attorney moved to dismiss the indictment on this basis. The trial court overruled the motion.
 

 Brimberry now contends that he was denied his fifth amendment right to be indicted by an unbiased jury.
 
 See Costello v. United States,
 
 350 U.S. 359, 363 & n. 7, 76 S.Ct. 406, 408 & n. 7, 100 L.Ed. 397 (1956). He contends that the whole grand jury was biased against him since it was their investigation which was impeded by his lies. In addition, he asserts that the grand jury members were witnesses to the crime and, as such, were unable to fulfill their function as an intermediary between the accuser and the accused.
 
 See Wood v. Georgia,
 
 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962).
 

 In
 
 United States v. Camporeale,
 
 515 F.2d 184, 189 (2d Cir.1975), the court stated: “No sound reason is advanced * * * for departing in this case from the settled practice of permitting the same grand jury which heard the witness to file an indictment charging him with perjury.”
 
 See also United States v. Morales,
 
 566 F.2d 402, 405 (2d Cir.1977) (upholding indictment for criminal contempt returned by the same grand jury before which the defendant had refused to testify). We find the same to be true here. It cannot be assumed that grand jurors will violate their oath “to indict no one because of prejudice,”
 
 United States v. Costello, supra, 350
 
 U.S. at 362, 76 S.Ct. at 408, solely because an individual has lied to them on a matter material to the grand jury’s investigation. In addition, there is no proscription against grand jurors “act[ing] on their own knowledge,”
 
 id.,
 
 in returning an indictment.
 

 3. Prior Conviction Evidence
 

 As discussed earlier, Brimberry has previously been convicted on two counts of obstruction of justice.
 
 See United States v. Brimberry,
 
 744 F.2d 580 (7th Cir.1984). Prior to his trial in this case, Brimberry filed a motion in limine requesting an order prohibiting the use of this prior conviction for impeachment or other purposes. The motion alleged that the prejudicial effect of the prior conviction evidence outweighed its probative value because one of the obstruction of justice counts involved Brimberry’s instruction to Miller to burn the Rimco account records, an event which was critical to the perjury charge alleged in count 5 of the indictment in this case.
 
 See
 
 FED.R.EVID. 609(a) (impeachment by evidence of criminal conviction). The trial court overruled Brimber-ry’s motion in limine.
 

 When Brimberry took the stand to testify in his own defense, one of the first questions asked on direct related to his current address. Brimberry testified that he was living in jail while serving a ten year sentence for obstruction of justice. Later, on cross-examination, it was ex
 
 *1352
 
 plained that he had been convicted of obstructing a federal grand jury investigation. Further cross-examination resulted in the following question and answer:
 

 Q And in connection with that conviction, Mr. Brimberry, they convicted you of certain acts that took place after November 2, 1981, after your plea agreement; isn’t that what they convicted you of?
 

 A My best recollection, Mr. Kane, I was convicted of having my brother-in-law [Miller] burning that [Rimco account] checkbook that’s in question here in this trial.
 

 Trial Trans. 6-32. Brimberry now argues that the evidence concerning the obstruction of justice conviction was inadmissible under FED.R.EVID. 609(a) and that the trial court abused its discretion in permitting the testimony to be introduced.
 

 We need not reach the merits of this issue because Brimberry waived any objection
 
 [4]
 
 to the introduction of the prior conviction evidence when, on direct examination, he voluntarily testified that he had previously been convicted of obstruction of justice.
 
 See Jones v. Collier,
 
 762 F.2d 71, 72-73 (8th Cir.1985);
 
 United States v. Johnson,
 
 720 F.2d 519, 522 (8th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984);
 
 United States v. Cobb,
 
 588 F.2d 607, 612-13 (8th Cir.1978),
 
 cert. denied,
 
 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). As we noted in
 
 Cobb,
 
 the defendant
 

 effectively cut off both the prosecutor’s privilege to withhold the possibly prejudicial evidence and the court’s opportunity to reconsider its preliminary ruling by voluntarily broaching the subject of the * * * [prior] conviction on direct examination.
 

 * * * * * *
 

 By voluntarily testifying to the * * * [prior] conviction, * * * [the defendant] waived any objection to the trial court’s pretrial ruling on that issue.
 

 United States v. Cobb, supra,
 
 588 F.2d at 613. In addition, Brimberry’s testimony on cross-examination setting forth the precise basis for the conviction (his act of instructing Miller to burn the Rimco account records) was also voluntarily introduced since the answer he gave was not sought by the government’s question. Thus, we find that Brimberry waived any objection to the introduction of this evidence.
 

 In conclusion, we reverse Brimberry’s conviction on one of the bankruptcy fraud charges (count 9), affirm Brimberry’s conviction on the other bankruptcy fraud charge (count 10), and affirm his conviction on all of the perjury charges (counts 3, 5, 6, 7 and 8). Because the conviction on count 9 has been set aside, and the sentence on count 9 with count 10 was concurrent but consecutive to the sentences on counts 3, 5, 6, 7 and 8, we remand count 10 to the district court for resentencing.
 

 [1]
 

 . Brimberry also contends that the second sentence of instruction No. 23 allowed the jury to convict Brimberry for acts of concealing assets from Stix prior to the time Stix was placed in receivership. This instruction stated:
 

 Concealment means not only secreting or hiding, but also includes preventing discovery, fraudulently transferring or withholding knowledge or information required to be made known. Since the offense of concealment is a continuing one, the acts of concealment may have begun before as well as after the bankrupting began.
 

 Given the fact that the trial court’s copy of the instructions indicate that the second sentence of the instruction was not read to the jury, we need not consider what effect the second sentence might have had on this issue.
 

 [2]
 

 . This instruction was a modified version of the instruction offered in Devitt & Blackmar for the crime of fraudulent concealment of property in a bankruptcy proceeding, 18 U.S.C. § 152. 2 E. Devitt & C. Blackmar,
 
 Federal Jury Practice and Instructions,
 
 § 48.07 at 328 (3d ed. 1977). While the offense described in 18 U.S.C. § 152 is very similar to the offense described in 15 U.S.C. § 78jjj(c)(l), the former provision uses the words "in any case under title 11” (the Bankruptcy Code) rather than the latter’s "in connection with or in contemplation of any liquidation proceeding” language.
 

 [3]
 

 . These acts led to Brimberry’s obstruction of justice conviction.
 
 See United States v. Brimberry,
 
 744 F.2d 580, 582 (7th Cir.1984).
 

 [4]
 

 . At trial, Brimberry did not object to the introduction of the prior conviction evidence. Brim-berry had filed a motion in limine seeking to prohibit the introduction of the prior conviction evidence, but *'[o]rdinarily in this circuit a motion in limine does not preserve error for appellate review."
 
 Sprynczynatyk v. General Motors Corp.,
 
 771 F.2d 1112, 1118 (8th Cir.1985). Brim-berry, however, alleges that the trial court agreed to consider the objections included in his motion in limine as continuing throughout the trial. We find no record of such an agreement. The government, however, does not dispute either the existence of such an agreement or the existence of a proper objection to the prior conviction evidence. Accordingly, we rely on the fact that Brimberry waived any objection to the prior conviction evidence even though it is not certain that any viable objection existed.