**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1925
_____

IN RE: D. ERIK VON KIEL,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 5:12-cv-00972)
District Judge:  Honorable Cynthia M. Rufe
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 24, 2013
Before: RENDELL, GREENAWAY, JR., and ALDISERT, Circuit Judges

(Opinion filed: December 24, 2013)
_____

OPINION
_____

PER CURIAM

 Pro se appellant Dr. D. Erik von Kiel ("Dr. von Kiel") appeals from an order of

the District Court, which affirmed the United States Bankruptcy Court's order entering

judgment in favor of the United States Trustee and against Dr. von Kiel.  He also appeals

from the District Court's denial of his motion for reconsideration.  For the following

reasons, we will affirm.

I.

In 1985, Dr. von Kiel graduated from Philadelphia College of Osteopathic Medicine ("PCOM"). During this time, he had used Health Education Assistance Loans ("HEAL") to pay for his education. In 2001, Dr. von Kiel was ordained as a minister of the International Academy of Life ("IAL") and took a vow of poverty, which required him to renounce any interest in real or personal property and any interest in any current or future income and grant those interests to IAL. Also around this time, two civil judgments totaling approximately $187,000, which arose from defaulted payments on his HEAL loans, were entered against Dr. von Kiel in the Lehigh County Court of Common Pleas. These judgments were registered against Dr. von Kiel's alias, D.O. Dennis W. Fluck, in the District Court in 2002.

Dr. von Kiel began to provide medical services to inmates at the Lehigh County Prison in 1989. In 2004, PrimeCare Medical, Inc. ("PrimeCare") contracted with Lehigh and other counties in Pennsylvania to provide medical services at county correctional facilities. From August 2004 until early 2005, Dr. von Kiel was an independent contractor with PrimeCare; however, in 2005, he became a full-time employee. As part of this transition, he completed Internal Revenue Service Form W-9 for tax reporting purposes. However, instead of placing his own social security number on the form, Dr. von Kiel completed the form using a number that was supplied by IAL. Each year, PrimeCare issued a W-2 to Dr. von Kiel that listed the social security number supplied by IAL and stated the amount of compensation he earned that year. Dr. von Kiel did not pay taxes on his yearly PrimeCare income of more than $150,000.

In 2006, the United States began collection efforts for Dr. von Kiel's HEAL loans by obtaining writs of garnishment from PrimeCare. Around this same time, Dr. von Kiel signed a deed transferring sole ownership of his house to his estranged wife. He also signed two different "Employee Direct Deposit Authorization Forms." Both forms directed that PrimeCare deposit Dr. von Kiel's paycheck into an account maintained by IAL; however, one was completed using Dr. von Kiel's own social security number while the other used the social security number provided to Dr. von Kiel by IAL.

In December 2006, Dr. von Kiel opened business checking and investment accounts in the name of "True Life Ministries, Inc" ("TLM") and named himself as trustee. He used a third tax identification number to open these accounts. The address listed for the TLM accounts was Dr. von Kiel's personal address, and  Dr. von Kiel was the only individual with signatory authority and custody and control of the debit cards linked to the accounts. In 2007, PrimeCare began depositing Dr. von Kiel's pay directly into the account maintained by IAL; IAL would then transfer money in similar amounts to the TLM accounts.

In 2009, the United States began garnishing the income paid by PrimeCare to Dr. von Kiel. In April 2010, the District Court ordered PrimeCare to begin paying 25% of Dr. von Kiel's wages to the United States to satisfy the HEAL loan judgments. On May 6, 2010, Dr. von Kiel filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code in an attempt to stop the garnishment of his wages and to obtain a discharge of his debts. In his schedules, he represented that he was an employee of IAL.

3

He stated that he received no salary or wages from IAL but instead received gifts of $12,787 each month from which no taxes or deductions were taken. Dr. von Kiel used these gifts to voluntarily pay monthly alimony and support for his separated wife and children. He alleged that he was left with less than $1,000 each month to pay his own expenses after making these payments.

The United States Trustee filed a complaint objecting to the discharge of Dr. von Kiel's debts on three independent statutory grounds: (1) under 11 U.S.C. § 727(a)(2)(A) based on his fraudulent concealment of assets; (2) under 11 U.S.C. § 727(a)(3) for his failure to maintain adequate financial records; and (3) under 11 U.S.C. § 727(a)(4) based on false oaths made in his bankruptcy case. On January 5, 2012, the Bankruptcy Court entered a judgment in favor of the Trustee denying discharge on each of these grounds. Dr. von Kiel appealed the Bankruptcy Court's judgment to the District Court. In February 2013, the District Court affirmed the Bankruptcy Court's judgment on the basis that Dr. von Kiel had fraudulently concealed his assets. It did not address the other two statutory grounds for the Bankruptcy Court's denial of discharge. Dr. von Kiel subsequently filed a motion for reconsideration, which the District Court denied. This appeal followed.[1]

---

[1] We exercise jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291. "On an appeal from a bankruptcy case, our review duplicates that of the district court and view[s] the bankruptcy court decision unfettered by the district court's determination." In re Orton, 687 F.3d 612, 614-15 (3d Cir. 2012) (internal quotation and citation omitted). Accordingly, we review the Bankruptcy Court's findings of fact for clear error and apply plenary review to its legal conclusions. Id. at 615.

On appeal, Dr. von Kiel argues that the Bankruptcy Court erred in denying a discharge on the basis that he had fraudulently concealed his assets because: (1) he did not transfer or conceal his assets within one year before the date of his chapter 7 petition; (2) the United States knew about his financial arrangements; and (3) the Bankruptcy Court erroneously found "per se fraud."

> Section 727(a)(2) provides that a debtor shall be denied a discharge where he:
>
> with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-
>
> (A)    property of the debtor, within one year before the date of the filing of the petition.

This provision requires the Bankruptcy Court to find that "(1) the [debtor] transferred, removed or concealed property; (2) the property belonged to the [debtor]; (3) the action occurred within one year of the filing of the [debtor's] bankruptcy petition; and (4) the [debtor], contemporaneously with the action, intended to hinder, delay and defraud a creditor." In re Dawley, 312 B.R. 765, 782 (Bankr. E.D. Pa. 2004) (alterations in original).

At issue here is whether Dr. von Kiel concealed property belonging to and/or controlled by him. Concealment is defined as acting "to secrete or hide away" or "'to prevent the discovery of or to withhold knowledge of.'" United States v. Schireson, 116 F.2d 881, 884 (3d Cir. 1940). Because concealment can only occur with the debtor's

property, the debtor must still "possess some property interest." Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) (alteration in original). Here, the record establishes that Dr. von Kiel did conceal his compensation from PrimeCare by transferring it to IAL each pay period. He concealed both his compensation and the transfers themselves by using a social security number that did not belong to him. His pay was then returned to him through transfers from IAL to his TLM accounts. These accounts were established using a tax identification number that did not belong to Dr. von Kiel, and Dr. von Kiel retained exclusive control over these accounts, as he was the only individual with signatory authority and who had custody of the debit cards to access these accounts. Furthermore, he regularly used the funds in the TLM accounts for the benefit of his family and himself. Accordingly, Dr. von Kiel maintained a property interest in the TLM accounts and the funds located therein, and he disclosed neither the existence of these accounts, nor the monies on deposit as of the date of his bankruptcy petition, nor the transfers of funds into and out of these accounts. Given this, the Bankruptcy Court properly found that Dr. von Kiel had concealed property belonging to him.

We agree with the Government that, contrary to Dr. von Kiel's argument, the "continuing concealment" doctrine does not apply to this case. Under this doctrine, "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one period as long as the debtor allowed the property to remain concealed into the critical year." Id.; see also In re Olivier, 819 F.2d 550, 555 (5th Cir. 1987). Although the Bankruptcy Court found that Dr. von Kiel had

6

hidden assets and income for over ten years, it relied on his concealment of his income during the year preceding his bankruptcy petition to determine that he had concealed property within the meaning of § 727(a)(2)(A).

The Bankruptcy Court also properly determined that Dr. von Kiel concealed his property with "a subjective intent . . . to hinder, delay or defraud [his] creditor[s]." In re Lawson, 122 F.3d 1237, 1240 (9th Cir. 1997). When determining whether a transfer falls under § 727(a)(2), bankruptcy courts can rely upon certain "badges of fraud" to find an intent to defraud. See In re Retz, 606 F.3d 1189, 1200 (9th Cir. 2010). These "badges" include:

> 1) a close relationship between the transferor and the transferee; 2) that the transfer was in anticipation of a pending suit; 3) that the transferor Debtor was insolvent or in poor financial condition at the time; 4) that all or substantially all of the Debtor's property was transferred; 5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and 6) that the Debtor received inadequate consideration for the transfer.

In re Woodfield, 978 F.2d 516, 518 (9th Cir. 1992). Here, the Bankruptcy Court found a close relationship between Dr. von Kiel, IAL, and the TLM accounts; a continuing pattern of concealment and transfers during the period when the United States was attempting to collect its judgments on Dr. von Kiel's defaulted HEAL loans; that Dr. von Kiel appeared to have a lack of assets and income because of these transfers; that all of Dr. von Kiel's income was concealed; that the United States had been hindered in collecting upon its judgments; and that most, if not all, of Dr. von Kiel's income was returned to him through the TLM accounts, which he solely controlled. Accordingly, the

7

evidence presented to the Bankruptcy Court was sufficient to establish that Dr. von Kiel had an intent to defraud his creditors. Furthermore, given the Bankruptcy Court's findings that these badges existed, we disagree with Dr. von Kiel's contention that the Bankruptcy Court found that his scheme regarding his income was "per se fraudulent."

We disagree with Dr. von Kiel that the Bankruptcy Court erred because the United States allegedly knew about his financial arrangements with PrimeCare, IAL, and the TLM accounts. Even assuming that this is true, it is irrelevant if a federal agency knew about the transfer. See In re Jennings, 533 F.3d 1333, 1340 (11th Cir. 2008) (denying discharge where debtor "did not attempt to conceal from his creditors the transfer" because bankruptcy court "concluded that he made the transfer with actual intent to hinder, delay, or defraud his creditors"); In re Hayes, 229 B.R. 253, 261 (B.A.P. 1st Cir. 1999) (creditor's knowledge of transfer does not defeat objection to discharge under § 727(a)(2)). In any event, Dr. von Kiel's decision to conceal the TLM accounts from the Bankruptcy Court was sufficient for it to determine that he had the intent to defraud. See Okla. Dep't of Sec. v. Wilcox, 691 F.3d 1171, 1176 (10th Cir. 2012) (quoting Sherman v. SEC, 658 F.3d 1009, 1018 (9th Cir. 2011)).

In sum, the Bankruptcy Court reasonably determined that Dr. von Kiel had the intent to defraud his creditors by concealing his income from PrimeCare and his TLM accounts within one year of the filing of his chapter 7 petition. Accordingly, the

8

Bankruptcy Court properly denied Dr. von Kiel's discharge under § 727(a)(2)(A), and the

District Court properly affirmed the Bankruptcy Court's order.[2]

III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[2] Given our agreement with the Bankruptcy Court's denial of discharge under § 727(a)(2)(A), we decline to reach Dr. von Kiel's arguments that the Bankruptcy Court erred by denying him a discharge pursuant to §§ 727(a)(3) & (4). We note further that the District Court did not abuse its discretion in denying Dr. von Kiel's motion for reconsideration, as it did not identify any of the grounds required for reconsideration. Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam).